UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JOHNNY WILLIAM BOYDE,

                                        Plaintiff,

                                                          5:22-cv-01024
v.                                                        (MAD/TWD)

DETECTIVE ANDREW BARNES,

                                        Defendant.

_____

APPEARANCES:

JOHNNY WILLIAM BOYDE
*Plaintiff, pro se*
07001284
Onondaga County Justice Center
555 South State Street
Syracuse, NY 13202

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**ORDER AND REPORT-RECOMMENDATION**</u>

        The Clerk has sent to the Court for review a *pro se* complaint filed by Johnny William

Boyde ("Plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983").  (Dkt. Nos. 1, 6.[1])  Plaintiff,

who is currently confined at the Onondaga County Justice Center, has not paid the filing fee

required for this action and seeks to proceed *in forma pauperis* ("IFP").  (Dkt. No. 4.)

_____

[1]  Plaintiff's original complaint was received on September 30, 2022.  (Dkt. No. 1.)  By Order
entered September 30, 2022, this case was administratively closed based on Plaintiff's failure to
comply with the filing fee requirement.  (Dkt. No. 2.)  Thereafter, Plaintiff filed his IFP
application and inmate notification form, along with a copy of his original complaint and
"amended complaint", and the Clerk was directed to reopen this action and restore it to the
Court's active docket.  (Dkt. Nos. 3, 4, 5, 6. 7.)  At this early juncture, and in deference to
Plaintiff's *pro se* status, rather than treat the "amended complaint" as a superseding pleading, the
Court will consider Plaintiff's "amended complaint" as a supplement to his original complaint and
consider them as a single pleading for purposes of initial review.  (Dkt. Nos. 1, 6.)

For the reasons set forth below, Plaintiff's IFP application is denied, and the undersigned recommends *sua sponte* dismissing this action without further leave to amend pursuant to 28 U.S.C. § 1915(g) and 28 U.S.C. §§ 1915(e) and 1915A.

## II.    IFP APPLICATION

Where a plaintiff seeks leave to proceed IFP, the Court must determine whether the plaintiff has demonstrated sufficient economic need to proceed without prepaying, in full, the Court's filing fee of four hundred two dollars ($402).[2]  The Court must also determine whether the "three strikes" provision of Section 1915(g) bars the plaintiff from proceeding IFP and without prepayment of the filing fee.[3]  More specifically, Section 1915(g) provides as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).[4]  If the plaintiff is indigent and not barred by Section 1915(g), the Court must also consider whether the causes of action stated in the complaint are, *inter alia*, frivolous

---

[2]  "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged."  *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).  "Although an indigent, incarcerated individual need not prepay the filing fee . . . at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts."  *Id*. (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

[3]  The manifest intent of Congress in enacting this "three strikes" provision was to curb prison inmate abuses and to deter the filing of multiple, frivolous civil rights suits by prison inmates.  *Tafari v. Hues*, 473 F.3d 440, 443-44 (2d Cir. 2007).  The question of whether a prior dismissal is a "strike" is a matter of statutory interpretation and, as such, is a question for the Court to determine as a matter of law.  *Id*. at 442-43.

[4]  As used in this Section, the term "prisoner" means "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations

or malicious, or if they fail to state a claim upon which relief may be granted.  28 U.S.C. §
1915(e)(2)(B); *see also* 28 U.S.C. § 1915A(b).

In this case, Plaintiff has demonstrated economic need and has filed the inmate
authorization form required in this District.  (*See* Dkt. Nos. 4, 5.)  Therefore, the Court must now
determine whether the "three strikes" provision bars Plaintiff from proceeding IFP.

### A.    Determination of "Strikes"

The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public
Access to Court Electronic Records ("PACER") Service.  *See* PACER Case Locator,
https://pcl.uscourts.gov/pcl/pages/search/findParty.jsf (last visited Oct. 18, 2022).  Plaintiff is a
frequent litigator and, prior to this action, has commenced twelve civil actions in this District.[5]

Having reviewed Plaintiff's litigation history, the Court finds that as of the date Plaintiff
commenced this action, he had already accumulated at least "three strikes."  *See Boyde v.
Brockway*, 9:18-cv-01231, Dkt. No. 10 (N.D.N.Y. Jan. 11, 2019) (dismissing complaint for
failure to state a claim upon which relief may be granted); *Boyde v. Green*, 9:18-cv-01033, Dkt
No. 7 (N.D.N.Y. Oct. 17, 2018) (same); *Boyde v. Uzunoff*, 9:21-cv-00741, Dkt. No. 26
(N.D.N.Y. Sept. 23, 2021) (same); *Boyde v. Quigley*, 9:21-cv-00742, Dkt. No. 9 (N.D.N.Y. Sept.
23, 2021) (same); *Boyde v. Onondaga Justice Center*, 9:21-cv-00748, Dkt. No. 9 (N.D.N.Y.

---

of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary
program."  28 U.S.C. § 1915A(c).

[5]  *See Boyde v. County of Onondaga*, 5:16-cv-00555 (N.D.N.Y. May 12, 2016); *Boyde v.
Brockway*, 9:18-cv-01231 (N.D.N.Y. Oct. 18, 2018); *Boyde v. Green*, 9:18-cv-01033 (N.D.N.Y.
Jan. 4, 2019); *Boyd v. County of Onondaga*, 5:19-cv-00150 (N.D.N.Y. Feb. 6, 2019); *Boyde v.
City of Syracuse*, 5:21-cv-00270 (N.D.N.Y. Mar. 9, 2021); *Boyde v. Uzunoff*, 9:21-cv-00741
(N.D.N.Y. June 29, 2021); *Boyde v. Quigley*, 9:21-cv-00742 (N.D.N.Y. June 29, 2021); *Boyde v.
Onondaga Justice Center*, 9:21-cv-00748 (N.D.N.Y. June 30, 2121);*Boyde v. Onondaga County
Justice Center*, 9:21-cv-00796 (N.D.N.Y. July 13, 2021); *Boyde v. Onondaga County
Justice Center*, 9:21-cv-00797 (N.D.N.Y. July 13, 2021); *Boyde v. McCarty*, 9:21-cv-00837 (N.D.N.Y.
July 23, 2021); *Boyde v. Fahey*, 5:21-cv-01277 (N.D.N.Y. Dec. 1, 2021).

Sept. 23, 2021) (same); *Boyde v. McCarty*, 9:21-cv-00837, Dkt. No. 4 (N.D.N.Y. Sept. 23, 2021)

(same); *Boyde v. Fahey*, 5:21-cv-01277, Dkt. No. 16 (N.D.N.Y. May 26, 2022) (same). Thus,

unless it appears that the "imminent danger" exception to the "three-strikes" rule is applicable to

this action, Plaintiff may not proceed IFP.

### B.    The "Imminent Danger" Exception

Congress enacted the "imminent danger" exception contained in the final phrase of

Section 1915(g) as a "safety valve" to prevent impending harms to prisoners otherwise barred

from proceeding IFP. *Malik v. McGinnis*, 293 F.3d 559, 563 (2d Cir. 2002). Generally

speaking, the allegations relevant to this inquiry "are those in which [plaintiff] describes physical

injury, threats of violence, and deprivation of medical treatment." *Chavis v. Chappius*, 618 F.3d

162, 165 (2d Cir. 2010).[6]

"[F]or a prisoner to qualify for the imminent danger exception, the danger must be

present when he files his complaint – in other words, a three-strikes litigant is not excepted from

the filing fee if he alleges a danger that has dissipated by the time a complaint is filed." *Pettus v.

Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009); *see also Polanco v. Hopkins*, 510 F.3d 152 (2d

Cir. 2007) (imminent danger claims must be evaluated at the time the complaint is filed, rather

than at the time of the events alleged). In addition, there must be an "adequate nexus between

the claims he seeks to pursue and the imminent danger he alleges." *Pettus*, 554 F.3d at 296. In

deciding whether such a nexus exists, the Second Circuit has instructed the courts to consider

---

[6] In *Chavis*, the Second Circuit described the nature of the Court's inquiry regarding imminent
danger as follows: "although the feared physical injury must be serious, we should not make an
overly detailed inquiry into whether the allegations qualify for the exception, because § 1915(g)
concerns only a threshold procedural question, while [s]eparate PLRA provisions are directed at
screening out meritless suits early on." *Id*. at 169-70 (quoting *Andrews v. Cervantes*, 493 F.3d
1047, 1055 (9th Cir. 2007)) (internal quotation marks omitted).

"(1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is fairly traceable to unlawful conduct asserted in the complaint, and (2) whether a favorable judicial outcome would redress that injury." *Id*. at 298-99.  Both requirements must be met in order for the three-strikes litigant to proceed IFP.  *Id*.  Generally speaking, the allegations relevant to the imminent danger inquiry "are those in which [plaintiff] describes physical injury, threats of violence, and deprivation of medical treatment." *Chavis*, 618 F.3d at 165.

Upon careful review of the complaint and "amended complaint", the Court finds Plaintiff has failed to plead facts sufficient to place him within the imminent danger exception provided by Section 1915(g), which is available "[w]hen a threat or prison condition is real and proximate, and when the potential consequence is 'serious physical injury.'" *See Flemming v. Kemp*, No. 9:09-CV-1185 (TJM/DRH), 2010 WL 3724031, at *2 (N.D.N.Y. Aug. 19, 2010) (citing *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002) (The imminent danger exception is available "for genuine emergencies," where "time is pressing" and "a threat . . . is real and proximate.")).

In this action, Plaintiff alleges wrongdoings related to a grand jury proceeding in Onondaga County Court in July 2016.  (Dkt. No. 1 at 2-5;[7] Dkt. No. 6 at 4.)  Specifically, Plaintiff claims that on July 28, 2016, Detective Andrew Barnes ("Defendant") "testified before the grand jury falsely, maliciously, and without probable cause" "for the purpose of procuring an indictment against Plaintiff . . . for three counts of the crimes of failure to register/verity change of address as a sex offender."  (Dkt. No. 1 at 2-3.)  "Solely based on, and in reliance on the false and perjured testimony of the Defendant", the grand jury indicted Plaintiff for the three counts. *Id*. at 3.  "The indictment was designated as Indictment Number 2016-0698-1 and was returned

---

[7]  Page references to documents identified by docket number are to the page numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

in open court on [August 2, 2016], and was duly docketed as Index Number 16-0831." *Id*. at 4-

5. Thereafter, on December 1, 2016, "Plaintiff's first count of the three was dismissed thus

terminating the prosecution in favored to Plaintiff." *Id*. at 5.[8] Plaintiff claims "the problem"

with Defendant's testimony during the grand jury proceeding was that "Plaintiff's designation as

a 'sex offender' within the meaning of Correction Law § 168a[1], was vacated by operation of

law upon reversal of Plaintiff's judgment on [November 14, 2014], and the Plaintiff did not

become a 'sex offender' (again) until the Plaintiff was sentenced on July 21, 2015." (Dkt. No. 6

at 4.) Plaintiff seeks significant monetary damages. (Dkt. No. 1 at 5-6; Dkt. No. 6 at 5.)

Even liberally construed, *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996), Plaintiff's

allegations do not plausibly suggest that he was at risk of an "imminent danger of serious

physical injury" when he filed this action in September 2022. *See Pettus*, 554 F.3d at 296

(stating that risk of serious physical harm must exist at the time the complaint is filed).

Accordingly, Plaintiff's IFP application is denied. (Dkt. No. 4.)

Moreover, because Plaintiff's claim(s) do not involve a physical injury, it is impossible

for Plaintiff to demonstrate that any of the events described in the amended complaint placed

him at risk of an "imminent danger of serious physical injury" when he filed this action. Under

such circumstances, the Court need not grant Plaintiff leave to amend his pleading further before

requiring him to pay the required filing fee or face dismissal. *See Chavis*, 618 F.3d at 170 (leave

need not be granted where even a liberal reading of the complaint fails to give "any indication

that a valid claim might be stated"); *Carolina v. Rubino*, 644 Fed. App'x 68, 73, (2d Cir. 2016)

(summary order) (concluding that the district court "did not abuse its discretion by dismissing

---

[8] Plaintiff attaches, *inter alia*, a copy of Decision/Order dated December 1, 2016, by the Hon.
Walter W. Hafner, Jr., Acting Onondaga County Court Judge, dismissing count 1 of the
indictment as an exhibit to the complaint. (Dkt. No. 1 at 11-18.)

Carolina's complaint without granting leave to amend Carolina's complaint" because the complaint "did not present the possibility of [plaintiff] stating a valid imminent-danger claim").

Ordinarily, the finding that Plaintiff does not qualify for the "imminent danger" exception to the "three-strikes" rule would end the Court's discussion, and Plaintiff, in light of his *pro se* status, would likely be afforded an opportunity to prepay the full filing of four hundred and two dollars ($402.00) to continue with this action.  However, as is discussed more completely below, because the Court has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed, in this instance, the Court recommends dismissal without leave to pay the filing fee.  *See, e.g.*, *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee).

## III.    SUFFICIENCY OF THE COMPLAINT

### A.    Legal Standards

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).  Similarly, this Court must review any "complaint in a civil action in which a prisoner[9] seeks redress from a governmental entity or officer or employee of a governmental entity" and must

---

[9]  As used in this Section, the term "prisoner" means "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  28 U.S.C. § 1915A(c).

"identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A. The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

"An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). "A claim is based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Id.*

To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id.* It

must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

### B.    Application

Plaintiff brings this action pursuant to Section 1983, which "provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). "To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005). Having carefully reviewed Plaintiff's amended complaint, the Court recommends that it be *sua sponte* dismissed in its entirety pursuant to 28 U.S.C. §§ 1915(e) and 1915A.

Here, as set forth above, Plaintiff claims Defendant testified before a grand jury "falsely, maliciously, and without probable cause" that Plaintiff had "committed three counts of the crime of failure to register/verify change of address as a sex offender[.]" (Dkt. No. 6 at 4.) Witnesses are, however, absolutely immune from liability under Section 1983 for damages for their testimony, even if their testimony was false. *See Rehberg v. Paulk*, 566 U.S. 356, 366-69 (2012); *Briscoe v. LaHue*, 460 U.S. 325 (1983).

9

In *Rehberg*, the Supreme Court held that "a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony." 566 U.S. at 369. This immunity attaches even if the testimony is false and given by a police officer. *See Adamou v. Doyle*, 707 F. App'x 745, 746 (2d Cir. 2018) (noting that under *Rehberg*, "a grand jury witness, including a law enforcement officer, 'has absolute immunity from any § 1983 claim based on the witness' testimony,' even if that testimony is perjurious" (quoting *Rehberg*, 566 U.S. at 369)).

Accordingly, Defendant is entitled to absolute immunity. *See, e.g.*, *Burdick v. Swarts*, No. 5:12-CV-1711 (NAM/DEP), 2019 WL 1409938, at *7 (N.D.N.Y. Mar. 28, 2019); *Jenkins v. Cty. of Washington*, 126 F. Supp. 3d 255 (N.D.N.Y. 2015) (police officers entitled to absolute immunity from liability for their alleged conduct of giving false testimony before grand jury and during criminal trial in § 1983 action against officers brought by arrestee who was prosecuted for and acquitted of drug offenses). Therefore, the Court recommends dismissing this action because it is frivolous, fails to state a claim on which relief may be granted, and seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e) and 1915A.[10]

Generally, when the court dismisses a *pro se* complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be

---

[10] Additionally, "[w]hen a [plaintiff] seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). It is unclear whether Plaintiff's current confinement at the Onondaga County Justice Center is related to this action. To the extent Plaintiff alleges he was wrongfully convicted as a result of Defendant's testimony at the grand jury proceeding, Plaintiff's pursuit of money damages may also be barred by the favorable termination rule in *Heck v. Humphrey*.

denied where any amendment would be futile.  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129,
131 (2d Cir. 1993).

    The defects in Plaintiff's Section 1983 claims against Defendant are substantive and
would not be cured if afforded an opportunity to amend.  Therefore, the Court recommends
dismissal of this action without leave to replead.

    Lastly, as noted, Plaintiff is a frequent *pro se* litigator in this District and has a history of
filing IFP complaints dismissed on initial review for failure to state a claim upon which relief
may be granted.  Plaintiff is cautioned that the filing of vexatious, harassing, or duplicative
lawsuits may result in the imposition of sanctions, including limitations on his ability to file
without prior permission of the Court.  *See Ajamian v. Nimeh*, No. 14-CV-0320 (GTS), 2014 WL
6078425, at *3 (N.D.N.Y. Nov. 13, 2014) ("[A] federal district court may impose reasonable
filing restrictions on a *pro se* litigant in that particular court, pursuant to 28 U.S.C. § 1651(a) and
its inherent authority to control and manage its own docket so as to prevent abuse in its
proceedings."); *see also In re Sassower*, 20 F.3d 42, 44 (2d Cir. 1994) (where a *pro se* plaintiff
has demonstrated a "clear pattern of abusing the litigation process by filing vexatious and
frivolous complaints," a "leave to file" requirement may be instituted by the court as an
appropriate sanction); *Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005) ("If a litigant has a
history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions,
including restrictions on future access to the judicial system.").

    **WHEREFORE**, for the reasons stated herein, it is hereby

    **ORDERED** that Plaintiff's IFP application (Dkt. No. 4) is **DENIED**; and it is further

    **RECOMMENDED** that this action be **DISMISSED IN ITS ENTIRETY WITHOUT**
**LEAVE TO REPLEAD** pursuant to 28 U.S.C. §§ 1915(e) and 1915A; and it is hereby

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam) on Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report.[11]  Such objections shall be filed with the Clerk of the Court.

**<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

**IT IS SO ORDERED.**

Dated: October 20, 2022
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[11]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

KeyCite Yellow Flag - Negative Treatment

Declined to Extend by  Lewis v. Huebner,   S.D.N.Y.,   March 18, 2019

2010 WL 3724031
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Woodrow FLEMMING, Plaintiff,

v.

Debbie KEMP; Jeffrey Hyde; George Waterson;
Correctional Officer John A. Tatro; Correctional Officer
Darrin C. Carrigeux; Correctional Officer Todd C.
Manley; Leo Palmer; Correctional Officer Wayne I.
Palmer; Correctional Officer Kevin Eddy; Correctional
Officer Jerry J. Herbert; and Terry James, Defendants.

No. 09–CV–1185 (TJM/DRH).
|
Aug. 19, 2010.

**Attorneys and Law Firms**

WOODROW FLEMMING, Malone, NY, pro se.

Hon. Andrew M. Cuomo, New York State Attorney General,
Aaron M. Baldwin, Esq., Assistant Attorney General, Albany,
NY, for Defendants.

REPORT–RECOMMENDATION AND ORDER [1]

[1]   This matter was referred to the undersigned for
report and recommendation pursuant to 28 U.S.C.
§ 636(b) and N.D.N.Y.L.R. 72.3(c).

DAVID R. HOMER, United States Magistrate Judge.

**\*1** Plaintiff pro se Woodrow Flemming ("Flemming"), an
inmate in the custody of the New York State Department of
Correctional Services ("DOCS"), brings this action pursuant
to 42 U.S.C. § 1983 alleging that various DOCS employees
violated his constitutional rights under the First, Fourth,
Eighth, and Fourteenth Amendments. [2] Second Am. Compl.
(Docket No. 9). Presently pending is defendants' motion [3]
to dismiss pursuant to 28 U.S.C. § 1915(g). Dkt No. 33.
Flemming opposes the motion. Dkt. No. 34. For the following

reasons, it is recommended that defendants' motion be
granted.

[2]   Flemming is familiar with the litigation process,
having filed over forty federal cases in courts
in the Second Circuit with nineteen of these
being civil rights cases in the Northern District.
See U.S. Party/Case Index (visited Aug. 11,
2010) < http://pacer . uspci.uscourts.gov/cgi-bin/
dquery.pl>. Flemming's lawsuits all appear to relate
to his incarceration in DOCS facilities

[3]   The motion is made on behalf of all remaining
defendants except Carrigeux, Eddy, and Herbert,
who have never been served with process or
otherwise appeared in this case. See Dkt. Nos. 13,
15.

**I. Background**

The facts are related herein in the light most favorable to
Flemming as the non-moving party. See Sheppard v. Beerman,
18 F .3d 147, 150 (2d Cir.1994).

Flemming proceeds in this action in forma pauperis ("IFP").
Dkt Nos. 3, 5. Flemming's second amended complaint and
subsequently filed motion papers were extremely difficult to
decipher and were nearly illegible. [4] Thus, from the Court's
inspection and attempted construction of the allegations, it
appears that all of the actions in dispute occurred while
Flemming was incarcerated at Upstate Correctional Facility
("Upstate").

[4]   Flemming has been instructed by the undersigned,
and many other judges in this district, that his
papers need to be either typewritten or in legible
handwriting. See, e.g., Flemming v. Goord, No. 06–
CV–562, 2007 WL 3036845, at \*1 n. 2 (citing
cases) (Dkt. No. 33–9).

Flemming contends that on September 5, 2005, his Eighth
Amendment rights were violated when defendants (1) used
excessive force to enter and extract him from his cell,
(2) were deliberately indifferent to his medical conditions
when deciding to deploy chemical agents into the cell, (3)
were deliberately indifferent to the serious medical needs
he developed after the use of force, (4) failed to protect or
intervene during the course of the excessive force, and (5)
subjected him to unconstitutional conditions of confinement

while in the special housing unit ("SHU")[5] by precluding him from having his medical machine, placing him on a restricted diet, and depriving him of regular contact with others and his personal effects. Second Am. Compl. at 7–9, 12–15; *see also* Dkt. No. 9 at 21–26, 34–35, 37, 42–43, 47, 63, 71–75, 79–80, 85, 91, 93–94, 101–111 (exhibits allegedly pertaining to some, but not all, of the Eighth Amendment violations). Flemming contends that defendants undertook these actions pursuant to a conspiracy, in retaliation for his proclivity to file grievances and in violation of his First Amendment rights. Second Am. Compl. at 8, 15; *see also* Dkt. No. 9 at 32–33, 44, 46, 48–50, 57–62, 64, 66, 68–70, 76–78, 81–84, 86–90, 92, 97–100 (exhibits showing some of the grievances filed), Moreover, Flemming contends that during the use of force incident, his cell was searched in violation of his Fourth Amendment rights. Second Am. Compl. at 7.[6] Lastly, Flemming contends that (1) his removal from a medical unit to SHU violated his due process rights, (2) he was deprived of due process during disciplinary hearings, and (3) defendants illegally confiscated his property. Second Am. Compl. at 8–11.

[5]   SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population ...." *N.Y. Comp.Codes R. & Regs. tit. 7, § 300.2(b) (2007).* Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. *Id.* at pt. 301.

[6]   While no previous mention was made of a First Amendment denial of access claim in the second amended complaint, Flemming did reference the allegedly illegal search in which documents were confiscated. These documents were identified, in a subsequent submission, as legal documents. As such, and pursuant to the instructions to liberally construe such complaints, the First Amendment violation has also been deemed pled in the amended complaint.

## II. Discussion

Under 28 U.S.C. § 1915(g), prisoners are barred from proceeding IFP after three or more prior claims have been dismissed as frivolous, malicious, or for failing to state a claim.[7] Frivolous claims "lack[ ] an arguable basis either in law or in fact." *Tafari v. Hues,* 473 F.3d 440, 442 (2d Cir.2007) (quoting *Neitzke v. Williams,* 490 U.S. 319, 325 (1989)). Malicious claims are those filed with the intent to hurt or harm another. *Id.* (citations omitted). The failure to state a claim applies a parallel definition from Fed.R.Civ.P. 12(b)(6), but "it does not follow that a complaint which falls afoul of the [12(b)(6) motion to dismiss] standard will invariably fall afoul of the [§ 1915(g)] standard]." *Neitzke,* 490 U.S. at 326; *see also Tafari,* 473 F.3d at 442 (citations omitted).

[7]   The three-strikes provision was adopted as part of the Prison Litigation Reform Act ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1995), which had as its principal purpose deterring frivolous prisoner litigation. *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997).

*2 This "three-strikes" provision contains a narrow exception which permits suits, notwithstanding prior dismissals, when the prisoner is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g); *see also Lewis v. Sullivan,* 279 F.3d 526, 531 (7th Cir.2002) (applying imminent danger exception "[w]hen a threat or prison condition is real and proximate, and when the potential consequence is 'serious physical injury.' "). For the exception to apply, "the danger must exist at the time the complaint is filed ... [since] Congress indicated that it wanted to include a safety valve ... to prevent impending harms, not those harms that had already occurred." *Malik v. McGinnis,* 293 F.3d 559, 562–63 (2d Cir.2002). Thus, courts must find "a nexus between the imminent danger a three-strikes prisoner alleges ... and the legal claims asserted in his complaint." *Pettus v. Morgenthau,* 554 F.3d 293, 297 (2d Cir.2009). In order to establish such a nexus, inmates must show that (1) the "imminent danger of serious physical injury ... is *fairly traceable* to unlawful conduct asserted in the complaint and (2) ... a favorable judicial outcome would *redress* that injury." *Id.* (emphasis in original).

Less than three years ago, Flemming's IFP status was revoked under § 1915(g) pursuant to a report-recommendation written by the undersigned. *See Flemming v. Goord,* No. 06–CV–562, 2007 WL 3036845 (N.D.N.Y. Oct. 16, 2007) (Dkt. No. 33–9). Moreover, Flemming's complaints have continued to be dismissed pursuant to § 1915(g) in this district for the past two years. *See Flemming v. The State of New York,* No. 09–CV–465 (NAM) (N.D.N.Y. June 8, 2009) (explaining that Flemming as been subject to the three-strike rule's enforcement on multiple occasions in this district) (citations omitted) (Dkt. No. 33–12); *Flemming v. Fischer,* No. 09–CV–

5 (LEK) (N.D.N.Y. Jan. 20, 2009) (same) (citations omitted) (Dkt. No. 33–11); *Flemming v. Goord,* No. 06–CV–1244 (LEK) (N.D.N.Y. Jan. 15, 2008) (holding that Flemming "is well aware of the 'three-strikes' rule ... [as he] has had [it] ... enforced against him in this district.") (citations omitted) (Dkt. No. 33–10). As these decisions demonstrate, Flemming has previously had at least three cases dismissed as frivolous or failing to state a claim and was fully aware that he had "struck out" in the Northern District. *See also Flemming v. New York,* No. 05–CV–406 (DNH), at 2–3 (N.D.N.Y. Oct. 25, 2005); *Flemming v. New York,* No. 06–CV–55 (DNH), at 2–3 (N.D.N.Y. Apr. 13, 2006); and *Flemming v. Wright,* No. 06–CV–86 (GLS)(GJD), at 2–3 (N.D.N.Y. Apr. 28, 2006).

Additionally, Flemming has failed specifically to plead facts sufficient to place him within the imminent danger exception provided by § 1915(g), which is applicable "[w]hen a threat or prison condition is real and proximate, and when the potential consequence is 'serious physical injury.' " *Lewis,* 279 F.3d at 531. Flemming proffers vague, general, and unspecified allegations of harm. *See, e.g.,* Dkt. No. 38 at 2 ("Plaintiff['s] condition is unsafe and cruel and unusual punishment. Plaintiff is in constant fear of violence by defendants and other staff in retaliation and conspiracy, this put Flemming in imminent danger to plaintiff['s] well-being and without the opportunity to seek other promising future."). However, such allegations were contained in Flemming's additional submissions, and not within the complaint, where the court is instructed to look to determine whether an inmate has qualified for the imminent danger exception. *See Avent v. Fisher,* No. 07–CV–1135 (DNH/GHL), 2008 WL 5000041, at *3 (N.D.N.Y. Nov. 20, 2008) ("[W]hen determining whether a prisoner has qualified for the 'imminent danger' exception, courts look at the non-conclusory allegations in the plaintiff's complaint.") (citations omitted). The complaint was void of any such allegations. Therefore, Flemming failed to establish any plausible indication of imminent harm, especially considering the fact that the excessive force and medical treatment provided immediately thereafter, occurred four years prior to the filing of the amended complaint.

**\*3** Even had these allegations been contained in the complaint, they would be insufficient to establish the imminent danger exception due to their lack of plausibility and specificity. *See Id.,* 2008 WL 5000041, at *5–6. As explained in *Avent,*

> district courts outside of this Circuit have held that the mere fact that multiple physical assaults have occurred in the past does not, in and of itself, constitute an imminent danger on the date of filing ... [U]nless the prospect of such a future assault is so specific and/or likely as to be deemed *real,* such an allegation will not suffice to allege an 'imminent danger' on the date of the filing. This point of law is consistent with the rather well-established rule that the imminent danger claimed by the inmate must be real, and not merely speculative or hypothetical.

*Id.* (internal quotation marks and citations omitted) (emphasis in original). Therefore, Flemming's contentions of constant fear of harm, without anything pointing to a specific threat of harm or identifiable danger to his health, are insufficient to establish a danger that is neither speculative nor hypothetical.

Moreover, the majority of Flemming's submissions do not address the imminent danger exception, as they primarily contain legal arguments about the substantive issues. *See* Dkt. No. 34 (enclosing over seventy pages of exhibits and a memorandum of law outlining the legal claims and arguments surrounding the constitutional merits). However, when the IFP argument is addressed outside of the vague sentence previously identified, Flemming contends that money should not be a motivating factor for dismissal, completely omitting any proffer of reasons why he is in imminent danger. Dkt. No. 40 at 3–4 ("The money is not going to change the case, so whether if the money is not paid, it will be paid ... Plaintiff ask for counsel pro bono and then the lawyer can pay for this case to move forward.").

Flemming's concerns that the imminent danger provision and IFP requirements would foreclose important cases are without merit. The Second Circuit has already determined such arguments unavailing because the imminent danger exception "does not prevent prisoners from filing civil actions, it merely prohibits them from enjoying [IFP] status. The imminent danger exception, which permits ... successive filings that would otherwise be barred, extends access to the courts rather

than restricts it." *Polanco v. Hopkins,* 510 F.3d 152, 156 (2d Cir.2007). Accordingly, Flemming is not foreclosed from bringing the case if he provides the filing fee or if he had specifically pled imminent danger, an exception to which his contentions have failed to conform.

Furthermore, dismissal is not precluded by the fact that Flemming has already been granted IFP status in this action. When a court becomes aware of three prior strikes only after granting IFP status, it is appropriate to revoke that status and bar the complaint under § 1915(g). *See McFadden,* 16 F.Supp.2d at 247. Therefore, it is recommended that (1) the order granting IFP status to Flemming (Dkt. No. 5) be vacated, and (2) Flemming's complaint be conditionally dismissed unless he pays the filing fee of $350.00 within thirty (30) days of the entry of a final order by the district court.

### III. Conclusion

**\*4** For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion to dismiss (Dkt. No. 33) be **GRANTED** and that:

1. Flemming's IFP status be **REVOKED;** and

2. This action be **DISMISSED** as to all claims and all defendants unless Flemming pays the filing fee of $350.00 within thirty (30) days of the entry of a final order by the district court.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the ... recommendation." N.Y.N.D.L.R. 72 .1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

### All Citations

Not Reported in F.Supp.2d, 2010 WL 3724031

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:22-cv-01024-MAD-TWD   Document 8   Filed 10/20/22   Page 17 of 38

**Burdick v. Swarts, Not Reported in Fed. Supp. (2019)**

2019 WL 1409938

2019 WL 1409938
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Steven D. BURDICK, Plaintiff,

v.

David SWARTS, James F. Darling, Ruell Todd, Oswego
County, and John and Jane Doe 1-10, Defendants.

5:12-cv-1711 (NAM/DEP)
|
Signed 03/28/2019

**Attorneys and Law Firms**

Steven D. Burdick, 4102 State Route 3, Fulton, New York
13069, Plaintiff, pro se.

Office of Frank W. Miller, Frank W. Miller, Esq., of
counsel, Christopher M. Militello, Esq., of counsel, 6575
Kirkville Road, East Syracuse, New York 13057, Attorney for
Defendants Oswego County, Todd, and Darling.

Office of Attorney General, State of New York, Timothy P.
Mulvey, Esq., of counsel, 615 Erie Boulevard West, Suite
102, Syracuse, New York 13204, Attorney for Defendant
Swarts.

**MEMORANDUM-DECISION AND ORDER**

Norman A. Mordue, Senior U.S. District Judge

**I. INTRODUCTION**

 **\*1** Plaintiff Steven D. Burdick, who at one point in this
litigation was represented by counsel but is now proceeding
*pro se*, brings this action under 42 U.S.C. § 1983 asserting
claims against Defendants David Swarts, the former New
York State Commissioner of Motor Vehicles ("Commissioner
Swarts"), Oswego County, retired Oswego County Sheriff
Ruell Todd ("Sheriff Todd"), and Oswego County Deputy
Sheriff James F. Darling ("Deputy Darling") (collectively, the
"Oswego County defendants"), related to a traffic stop and
subsequent arrest on November 22, 2009. (Dkt. No. 157).
Now before the Court are Defendants' motions for summary
judgment. (Dkt. Nos. 201, 209). Plaintiff opposes the motions.
(Dkt. Nos. 208, 216, 220). Defendants' motions are granted,
for the reasons that follow.

**II. BACKGROUND**

 **A. Evidence Before the Court**
On June 1, 2018, Commissioner Swarts moved for summary
judgment, (Dkt. No. 201), and included a Statement of
Material Facts pursuant to Local Rule 7.1(a)(3), (Dkt. No.
201-1). The motion also notified Plaintiff of the consequences
of not properly responding, pursuant to Rule 56(e) of
the Federal Rules of Civil Procedure and Local Rule
56.2. (Dkt. No. 201, p. 1). However, Plaintiff's opposition
does not specifically respond to Commissioner Swarts's
Statement of Material Facts; rather Plaintiff "relies on his
statement of material facts contained within his third amended
complaint." (Dkt. No. 208, p. 2). Similarly, on July 31, 2018,
the County Defendants moved for summary judgment, (Dkt.
No. 209), and included a Statement of Material Facts, (Dkt.
No. 209-20). Counsel affirms that Plaintiff was served with
the Court's form Notification of the Consequences of Failing
to Respond to a Summary Judgment Motion, (Dkt. No.
210). Once again, Plaintiff's opposition does not specifically
respond to the movants' Statement of Material Facts; rather
Plaintiff sets out his own version of the facts in memoranda
of law, without citing any evidence, and attaches several
exhibits. (Dkt. Nos. 216, 216-1). Plaintiff later submitted an
additional memorandum, (Dkt. No. 220), which Defendants
move to strike as "an improper surreply filed without
leave." (Dkt. No. 222). The additional memorandum appears
to be simply a notarized version of an earlier one. (*See*
Dkt. No. 216). Neither memorandum is sworn under oath,
or declared under penalty of perjury pursuant to 28 U.S.C.
§ 1746. Therefore, neither memorandum is admissible as
evidence. *See also Hughes v. Elmira College*, 584 F.Supp.2d
588, 590 (W.D.N.Y. 2008) (finding that the *pro se* plaintiff's
statement and memorandum of law were unsworn and
inadmissible). Accordingly, Defendants' motion to strike is
denied as moot.

Under these circumstances, the Court may accept Defendants'
statements of facts as true where appropriate, supported by
the record, and unchallenged by Plaintiff with admissible
evidence. [1] *See Champion v. Artuz*, 76 F.3d 483, 485 (2d
Cir. 1996) (reasoning that even *pro se* litigants "should be on
notice from the very publication of Rule 56(e) that a party
faced with a summary judgment motion may not rest upon
the mere allegations or denials of the party's pleading and that
if the party does not respond properly, summary judgment, if
appropriate, shall be entered against him") (quoting *Graham
v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988)); *Riehl v. Martin*,
No. 13 Civ. 439, 2014 WL 1289601, at \*5, 2013 U.S. Dist.

**Burdick v. Swarts, Not Reported in Fed. Supp. (2019)**

2019 WL 1409938

Case 5:22-cv-01024-MAD-TWD   Document 8   Filed 10/20/22   Page 18 of 38

LEXIS 186610, (N.D.N.Y. Dec. 19, 2013) ("Where, as here, a party has failed to respond to the movant's statement of material facts in the manner required under N.D.N.Y. L.R. 7.1(a)(3), the facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record, and (2) the nonmovant, if proceeding pro se, has been specifically advised of the possible consequences of failing to respond to the motion."), *report-recommendation adopted*, 2014 WL 1289601, 2014 U.S. Dist. LEXIS 42870 (N.D.N.Y. Mar. 31, 2014).

[1]    Although Plaintiff is now appearing *pro se*, it is worth noting that this case is the second one Plaintiff has pursued to the summary judgment stage in federal court in the Northern District of New York. *See Burdick v. Kurilovitch, et al.*, No. 14 Civ. 1254.

**\*2**  While the Court "is not required to consider what the parties fail to point out," in deference to Plaintiff's *pro se* status and out of an abundance of caution, the Court has nevertheless conducted "an assiduous review of the record" to determine whether there is evidence that might support any of Plaintiff's claims. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). Therefore, the following facts are largely taken from Defendants' statements of facts and supporting evidence, Plaintiff's deposition and trial testimony, and the evidence submitted by Plaintiff, to the extent it is in admissible form.

### B. Plaintiff's License Suspension

Plaintiff is a tow truck operator who resides in Oswego County, New York. (Dkt. No. 201-1, ¶ 6). On January 14, 2009, Plaintiff was issued a traffic ticket for towing on the New York State Thruway without a permit. (Dkt. No. 209-2). Thereafter, Plaintiff's driver's license was suspended on or about July 3, 2009. (*Id.*). Plaintiff testified that he paid the ticket, faxed the receipt to the Fulton Department of Motor Vehicles ("DMV"), and was told "you're all set." (Dkt. No. 209-4, pp. 15–16).

### C. Plaintiff's Arrest

On November 22, 2009, Plaintiff drove a van to a vehicle checkpoint on State Route 49 in Central Square, Oswego County, which was monitored by Defendant Darling, a deputy employed by Defendant Oswego County in its Sheriff's Department. (Dkt. No. 209-20, ¶¶ 2, 5–6). The van Plaintiff drove had no inspection sticker on it. (*Id.*, ¶ 7). Deputy Darling noticed the inspection sticker was missing and

directed Plaintiff to pull over into a nearby parking lot. (*Id.*, ¶ 8). Plaintiff pulled the van over into the parking lot. (*Id.*, ¶ 9). Deputy Darling asked Plaintiff about the missing inspection sticker. (*Id.*, ¶ 10). Plaintiff told Deputy Darling that the sticker must have fallen off. (*Id.*, ¶ 11). Deputy Darling asked Plaintiff to provide proof that the van had been inspected. (*Id.*, ¶ 12). Plaintiff told Deputy Darling that he did not have the inspection paperwork. (*Id.*, ¶¶ 13–14).

Deputy Darling told Plaintiff that he would give Plaintiff a ticket, and Deputy Darling asked Plaintiff for his driver's license, registration card, and proof of insurance. (*Id.*, ¶¶ 15–16). Plaintiff did not have his driver's license with him, and he did not have a current valid insurance card for the van or the registration card for the van. (*Id.*, ¶¶ 17–19). Deputy Darling went to his patrol car and checked a computer system for vehicle and personal data from the DMV concerning Plaintiff. (*Id.*, ¶ 20). The information returned in response to the inquiry was that Plaintiff's driver's license was currently suspended. (*Id.*, ¶ 21).

When Deputy Darling returned to the van, he found Plaintiff sitting in the driver's seat of the van with his eighteen-month old child in his lap. (Dkt. No. 209-3, p. 10). According to Deputy Darling, he told Plaintiff that his license was suspended and that he had to place the child in the passenger's seat and to step out of the van. (*Id.*). Deputy Darling testified that Plaintiff did not put the child aside or get out of the van as instructed, but rather said that his license was not suspended, and it was "taken care of." (*Id.*). Deputy Darling testified that Plaintiff repeatedly refused to get out of the van, saying "No, I'm not getting out." (*Id.*, p. 13). Deputy Darling testified that Plaintiff continued to hold the child. (*Id.*).

According to Deputy Darling, Plaintiff then stepped out of the van with the child, lifted the child up away from his body toward Deputy Darling, pulled the child back to his body, got back in the van, and sat back in the driver's seat with the child on his lap again. (*Id.*). Plaintiff then continued to argue with Deputy Darling. (*Id.*). Deputy Darling testified that he had to tell Plaintiff to step out of the van a total of ten times. (*Id.*, p. 15). Eventually, Plaintiff put the child in the passenger's seat, and Deputy Darling arrested him and took him into custody. (*Id.*, p. 16).

**\*3**  Plaintiff admitted that, on November 22, 2009, when Deputy Darling first instructed him to put the child aside and step out of the van because he was under arrest, he did not put the child aside or get out of the vehicle, and instead told

**Burdick v. Swarts**, Not Reported in Fed. Supp. (2019)

2019 WL 1409938

Deputy Darling that a ticket he had received in the Town of Van Buren, New York had been paid. (*See* Dkt. No. 209-4, pp. 15–18; Dkt. No. 209-5, pp. 2–3). Plaintiff further testified that Deputy Darling informed him again that he was under arrest and to put his child to the side, but Plaintiff refused and proposed that Deputy Darling call a tow truck and just give Plaintiff a traffic ticket. (Dkt. No. 209-5, p. 3). Plaintiff testified that he had been pulled over for the same thing three months earlier, that he had gone to the DMV and taken care of it, and that he told Deputy Darling "it's a mistake." (*Id.*). Plaintiff testified that Deputy Darling again told him that he was under arrest and to put the child aside, but Plaintiff refused because he wanted to first put the child in a car seat. (*Id.*). Plaintiff testified that Deputy Darling again repeated the instruction, and Plaintiff finally got out. (*Id.*).

According to Deputy Darling, Plaintiff's positioning of the child delayed the arrest because Deputy Darling was concerned for the child's safety. (Dkt. No. 209-3, p. 17). Deputy Darling testified that, before the situation escalated, he had intended to arrest Plaintiff and take him into custody in his patrol car on a charge of aggravated unlicensed operation of a motor vehicle in the third degree, issue him traffic tickets, and then release him. (*Id.*, pp. 15–16). After Plaintiff resisted his instructions to step out of the van and put the child aside, and then held the child between himself and the officer, Deputy Darling decided to arrest Plaintiff and take him into custody for arraignment upon charges of obstruction of governmental administration and endangering the welfare of a child, as well as the aggravated unlicensed operation of a motor vehicle charge. (*Id.*).

According to Ronald L. Casselman, on November 22, 2009, he received a call from the police to "go to Central Square and bring the Burdick company tow truck to tow Steve Burdick's car and get the kids as Steve was an unlicensed driver and could not operate the car." (Dkt. No. 216-1, p. 23). When Casselman arrived, he found Plaintiff handcuffed in the back of an Oswego County Sheriff's car. (*Id.*). Casselman states that he "told the Sheriff there must be some mix-up [about the suspended license] because Steve had paid that fine." (*Id.*). Plaintiff's wife arrived at the scene and took the kids, while Casselman towed Plaintiff's vehicle. (*Id.*).

### D. Plaintiff's Prosecution

Plaintiff was arraigned the same day as his arrest, November 22, 2009, at approximately 2:25 p.m., which was not long after Deputy Darling brought him to the police station. (Dkt. No. 209-17, ¶ 6). Plaintiff was charged with: 1) aggravated

unlicensed operation of a motor vehicle in the third degree; 2) endangering the welfare of a child; 3) obstruction of governmental administration in the second degree; and 4) vehicle registration and inspection violations. (Dkt. No. 209-13).

Following his arraignment, Plaintiff called Defendant Todd, the Sheriff of Oswego County, and asked to meet with him concerning the arrest and charges. (Dkt. No. 209-20, ¶¶ 3, 39). Sheriff Todd advised Plaintiff it would not be in Plaintiff's best interest for them to meet, and that any admissions Plaintiff made to Sheriff Todd could be used against him in the criminal case. (*Id.*, ¶ 39). Plaintiff insisted, and they met on November 24, 2009. (*Id.*, ¶¶ 39–40). Sheriff Todd began the meeting by reminding Plaintiff that any admissions he made could be used against him. (*Id.*, ¶ 41). During the meeting, Plaintiff made several admissions, which Sheriff Todd reported to the Oswego County District Attorney's Office in the form of a "Notice of Intent to Use Admission or Confession" pursuant to New York Criminal Procedure Law § 710.30 (or "710.30 notice"). (Dkt. No. 209-12). The 710.30 notice stated in relevant part: "Admissions of no insp. sticker, no letter saying suspension was lifted. Admissions to holding child in front of him and refusing to get out of van." (*Id.*). Later, on August 26, 2010, Defendants Darling and Todd also testified at a *Huntley* hearing, which concerned the admissibility of certain statements made by Plaintiff. (Dkt. No. 209-11).

**\*4** On August 26, 2011, Plaintiff appeared for a criminal trial before a jury on charges of endangering the welfare of a child, obstruction of governmental administration, and vehicle registration and inspection violations. (Dkt. Nos. 209-3, 209-4). Plaintiff claims that the aggravated unlicensed operation charge was dismissed by the judge in his criminal case a couple weeks before the trial. (Dkt. No. 209-6, p. 2). Defendants Darling and Todd testified at the trial concerning the events leading up to Plaintiff's arrest on November 22, 2009, and Plaintiff's admissions on November 24, 2009. (Dkt. Nos. 209-3, 209-4).

Among other things, Deputy Darling testified that he told Plaintiff to step out of the vehicle ten times before Plaintiff complied, and that Plaintiff held onto the child, delaying Plaintiff's arrest. (Dkt. No. 209-3, pp. 15–17). Among other things, Sheriff Todd testified that Plaintiff admitted that: he did not have paperwork with him on November 22, 2009 showing that he had fixed his suspended license; that he refused to exit the vehicle, and that "he picked the child up and put it in front of him." (Dkt. No. 209-4, pp. 10–11). Sheriff

**Burdick v. Swarts, Not Reported in Fed. Supp. (2019)**

2019 WL 1409938

Todd testified that traffic stop escalated into an arrest because Plaintiff "just didn't do what he was asked to do." (*Id.*, p. 10).

On August 27, 2011, a jury convicted Plaintiff of obstruction of governmental administration, as well as failure to produce a registration certificate and operating an uninspected motor vehicle. (Dkt. No. 209-4, pp. 23–24). The jury acquitted Plaintiff of endangering the welfare of a child. (*Id.*).

**E. Plaintiff's Appeal**

Plaintiff appealed his convictions, and on March 3, 2014, an Oswego County court overturned the convictions due to an error in jury selection by the judge in the criminal trial. (Dkt. No. 209-9). The court rejected various arguments as to the merits of the charges and remanded for a new trial. (*Id.*). By decision dated April 26, 2016, a judge of the Hastings Town Court dismissed the surviving charges (obstruction of governmental administration, failure to produce a registration certificate, and operating an uninspected motor vehicle) in the interests of justice pursuant to New York Criminal Procedure Law § 170.40. (Dkt. No. 209-10). Among other things, the judge found that:

1) No arrest would have arisen should the DMV database been properly updated.

2) The only harm caused by the offense was to the equities of the Defendant for the costs of his defense, which could be the responsibility of the NYS DMV.

3) Any evidence in this case is secondary to the cause and effect relationship of the NYS DMV failure to update their systems.

4) The Court does not see misconduct on behalf of any Police Agency, but rather it appears that the Defendants actions could have been more amiable in order to resolve the issues presented.

5) Quite possibly the end result would be one of a fine and surcharge, both of which the Court feels New York State would rather see justice served.

6) The Court sees no useful purpose regarding a judgement of conviction.

(*Id.*).

**III. STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Jeffreys v. City of New York.*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (summary judgment appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim") (internal quotation marks omitted).

**\*5** If the moving party meets this burden, the nonmoving party must "set forth specific facts showing ... a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250, 106 S.Ct. 2505; *see also Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials ... cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v.*

**Burdick v. Swarts, Not Reported in Fed. Supp. (2019)**
2019 WL 1409938

Case 5:22-cv-01024-MAD-TWD   Document 8   Filed 10/20/22   Page 21 of 38

*Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (alterations in original) (internal quotation marks and citations omitted)).

## IV. DISCUSSION

As explained in the Court's Memorandum-Decision & Order dated August 31, 2017, Plaintiff's remaining claims in this case are as follows: 1) as against Deputy Darling, federal and state law malicious prosecution and First Amendment retaliation; 2) as against Sheriff Todd, federal and state law claims for malicious prosecution and a federal claim for supervisory liability; 3) as against Oswego County, vicarious liability under New York State law for the actions of Deputy Darling and Sheriff Todd; and 4) as against Commissioner Swarts and the John Doe Defendants, an apparent federal due process claim, with related claims for supervisory and *Monell* liability. (Dkt. Nos. 155, 157). The Court will discuss each claim in turn.

### A. Malicious Prosecution

The Defendants argue that Plaintiff's Section 1983 malicious prosecution claim fails for several reasons, including: 1) the "for lack of an unconstitutional detention"; and 2) the immunity defenses applicable to their actions. (Dkt. No. 209-21, pp. 8–18). The elements of a malicious prosecution claim under New York law are: 1) the defendant initiated a prosecution against the plaintiff; 2) the defendant lacked probable cause to believe the proceeding could succeed; 3) the defendant acted with malice; and 4) the prosecution was terminated in the plaintiff's favor. *See Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000); *Colon v. City of New York*, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983).

### 1. Unconstitutional Seizure

"When raising a malicious prosecution claim under Section 1983, a plaintiff must also show a 'seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment.' " *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (quoting *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004)). The issue is generally a matter of law for the court, and the Second Circuit has "consistently held that a post-arraignment defendant who is 'obligated to appear in court in connection with [criminal] charges whenever his attendance [i]s required' suffers a Fourth Amendment

deprivation of liberty." *Swartz*, 704 F.3d at 112 (quoting *Murphy v. Lynn*, 118 F.3d 938, 946 (2d Cir. 1997)); *see also Perez v. Duran*, 962 F.Supp.2d 533, 541 (S.D.N.Y. 2013) (discussing seizure requirement and court appearances).

Defendants argue that Plaintiff cannot show any unconstitutional detention for the federal malicious prosecution claim because "all the 'seizures' of which Plaintiff could complain – any mandatory court appearances, and his trial – each time occurred due to the charge of obstructing governmental administration as well as the other charges against him." (Dkt. No. 209-21, p. 9). Defendants further argue that the charge for obstructing governmental administration "was not resolved favorably to Plaintiff because – following his conviction in the jury trial and the reversal on a technicality on appeal – that charge was ultimately dismissed in the interests of justice." (*Id.*, p. 10). Defendants argue that "[b]ecause any court appearances and the trial were all necessitated by a charge as to which there was no favorable termination, those 'seizures' could not form the basis of a malicious prosecution claim, and were all constitutional as a matter of law." (*Id.*). Plaintiff's opposition papers do not appear to respond to this argument. (Dkt. Nos. 216, 218).

**\*6** Here, the undisputed facts show that Plaintiff was charged with: 1) aggravated unlicensed operation of a motor vehicle; 2) endangering the welfare of a child; 3) obstruction of governmental administration; and 4) vehicle registration and inspection violations. (Dkt. No. 209-13). Further, the record shows that the first charge was dismissed, (Dkt. No. 209-6), and a jury acquitted Plaintiff of child endangerment while convicting him of obstructing governmental administration and the vehicle registration and inspection violations. (Dkt. No. 209-4, pp. 23–24). It is undisputed that following Plaintiff's appeal on various grounds, the Oswego County Court found reversible error in the trial court's jury selection process, reversed the judgment, and remanded for a new trial. (Dkt. No. 209-9). Notably, the court rejected Plaintiff's argument that the jury's conviction for obstruction of governmental administration was inconsistent with the acquittal for child endangerment. (*Id.*, pp. 4–6). The court pointed out that:

> The People alleged that the defendant obstructed or prevented or attempted to prevent a police officer from arresting the defendant by holding an eighteen month old child up and *put* in front of him so that the police officer was not able to take the defendant into custody.

**Burdick v. Swarts, Not Reported in Fed. Supp. (2019)**

2019 WL 1409938

Case 5:22-cv-01024-MAD-TWD    Document 8    Filed 10/20/22    Page 22 of 38

Based upon the testimony of Officer Darling ..., the jury could have found that the defendant obstructed, impaired, or perverted the administration of law or other governmental function or prevented or attempted to prevent a public servant from performing an official function (i.e the defendant's lawful arrest), by means of intimidation, physical force, or interference (i.e. holding a child out in front of him as a shield between himself and the arresting officer), and that the defendant did so intentionally.

(*Id.*, pp. 5–6). Rather than hold a new trial, a Town Justice dismissed the case pursuant to Section 170.40 of the New York State Rules of Criminal Procedure. (Dkt. No. 209-10). In dismissing the case in "furtherance of justice," the court emphasized that "[n]o arrest would have arisen should the DMV database been properly updated," and that "[t]he only harm caused by the offense was to the equities of the Defendant for the costs of his defense, which could be the responsibility of the NYS DMV." (*Id.*). The court also highlighted that it "does not see misconduct on behalf of any Police Agency, but rather it appears that the Defendants actions could have been more amiable in order to resolve the issues." (*Id.*). The court concluded that it "sees no useful purpose regarding a judgment of conviction." (*Id.*).

As this Court previously observed, a dismissal pursuant to Section 170.40 is not an acquittal and typically does not support a malicious prosecution claim. (Dkt. No. 155, p. 12). New York's highest court has held that "any termination of a criminal prosecution, such that the criminal charges may not be brought again, qualifies as a favorable termination, so long as the circumstances surrounding the termination are not inconsistent with the innocence of the accused." *Cantalino v. Danner*, 96 N.Y.2d 391, 729 N.Y.S.2d 405, 754 N.E.2d 164, 167 (2001) (citing *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 712 N.Y.S.2d 438, 734 N.E.2d 750, 755 (2000)). Ultimately, "the question is whether, under the circumstances of each case, the disposition was inconsistent with the innocence of the accused." *Id.*

In this case, the circumstances surrounding the dismissal of the trial charges against Plaintiff are clear and undisputed. As Defendants note, the Oswego County Court reversed on the basis of a procedural error with jury selection, but rejected Plaintiff's argument on the merits of the obstruction charge. (Dkt. No. 209-9, pp. 5–6). In dismissing the case in "furtherance of justice," the trial court emphasized that "[n]o arrest would have arisen should the DMV database

been properly updated," and that "[t]he only harm caused by the offense was to the equities of the Defendant for the costs of his defense, which could be the responsibility of the NYS DMV." (*Id.*). The court also highlighted that it "does not see misconduct on behalf of any Police Agency, but rather it appears that the Defendants actions could have been more amiable in order to resolve the issues." (*Id.*). The court concluded that it "sees no useful purpose regarding a judgment of conviction." (*Id.*). This rationale for dismissal does not show that Plaintiff was innocent of the charges, or that Defendants lacked probable cause. Based on the record, the Court finds that the charges against Plaintiff for obstruction of governmental administration and vehicle registration and inspection violations were not terminated in his favor. (*See also* Dkt. No. 155, p. 13).

**\*7** That leaves two potentially viable charges for Plaintiff's federal malicious prosecution claim: 1) endangering the welfare of a child; and 2) aggravated unlicensed operation of a motor vehicle. As the Court previously noted, Plaintiff was acquitted of the former, and the circumstances surrounding the latter are not entirely clear. (*See also* Dkt. No. 155, p. 14). However, Defendants correctly point out that further inquiry on these charges is not necessary because Plaintiff's federal malicious prosecution claim must rise or fall by showing an unconstitutional seizure. The Second Circuit has held that a plaintiff cannot show such a seizure unless it was "solely attributable" to the unlawful charges. *Coleman v. City of New York*, 688 F. App'x 56, 58 (2d Cir. 2017). In that case, the plaintiff was charged with, among other things, assault, obstruction of governmental administration, reckless driving, and traffic violations. The Second Circuit sustained dismissal of the plaintiff's malicious prosecution claim predicated on the assault charges because "[e]ven if the assault charges had never been, [the plaintiff] still would have had the obligation to appear on account of the other criminal charges (which cannot support a malicious prosecution claim, because they were indisputably supported by probable cause) and the traffic code violations (which cannot support a malicious prosecution claim because they were terminated unfavorably to [the plaintiff] by [adjournment in contemplation of dismissal] )." 688 F. App'x at 58.

Likewise, in this case Plaintiff cannot sustain a federal malicious prosecution claim based on the child endangerment and aggravated unlicensed operation charges because the record shows that, even if those charges had never been brought, he would have had the obligation to appear in court on the obstruction of governmental administration

Burdick v. Swarts, Not Reported in Fed. Supp. (2019)

2019 WL 1409938

Case 5:22-cv-01024-MAD-TWD   Document 8   Filed 10/20/22   Page 23 of 38

charge. (*See* Dkt. Nos. 209-3, 209-4, 209-9, 209-10, 209-13). As discussed above, the obstruction of governmental administration charge cannot support a federal malicious prosecution claim because it was not terminated in Plaintiff's favor. Accordingly, based on the undisputed facts, Plaintiff's federal malicious prosecution claim must be dismissed. *See also Warner v. Freeman*, No. 14 Civ. 1192, 2017 WL 4227655, at *2, 2017 U.S. Dist. LEXIS 154743 (D. Conn. Sept. 22, 2017) (granting summary judgment on malicious prosecution claim where the plaintiff failed to show "that he suffered a post-arraignment constitutionally cognizable deprivation of liberty attributable to the criminal trespass charge"); *Flynn-Rodriguez v. Cheng*, No. 14 Civ. 2287, 2017 WL 3278889, at *3, 2017 U.S. Dist. LEXIS 120775 (E.D.N.Y. Aug. 1, 2017) ("Though Ms. Flynn-Rodriguez suffered a deprivation of liberty, the resisting arrest charge was not the sole cause of that deprivation; the deprivation was also caused by other charges that were supported by probable cause. The malicious prosecution claim is dismissed."); *Othman v. City of New York*, No. 13 Civ. 4771, 2015 WL 1915754, at *6, 2015 U.S. Dist. LEXIS 54903 (E.D.N.Y. Apr. 27, 2015) (dismissing claim of malicious prosecution because the plaintiff failed to allege "any deprivation of liberty that stems exclusively from those charges that may have terminated in his favor").

### 2. Immunity Defenses

Moreover, even if Plaintiff could show evidence of an unconstitutional seizure, his malicious prosecution claim against Defendants Darling and Todd would fail because they are entitled to absolute immunity and/or qualified immunity for their actions. It is well-established that in Section 1983 actions, all witnesses, including police officers, are absolutely immune from civil liability based on their testimony in judicial proceedings. *Briscoe v. LaHue*, 460 U.S. 325, 343, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). The Supreme Court observed that "[s]ubjecting government officials, such as police officers, to damages liability under § 1983 for their testimony might undermine not only their contribution to the judicial process but also the effective performance of their other public duties." *Id.* In judicial proceedings, the deterrent of potential civil liability is unnecessary to prevent false testimony because perjury is a serious *criminal* offense. *See Rehberg v. Paulk*, 566 U.S. 356, 367, 132 S.Ct. 1497, 182 L.Ed.2d 593 (2012). Therefore, Defendants Darling and Todd are entitled to absolute immunity for their testimony at trial, even if it was false.

The same is also true for their testimony at the hearing pursuant to *People v. Huntley*, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965) (providing a criminal defendant with a pre-trial hearing to determine whether statements are admissible). The Second Circuit has recognized that "police officers who testify at adversarial pretrial proceedings are entitled to absolute immunity from liability based on that testimony." *Daloia v. Rose*, 849 F.2d 74, 76 (2d Cir. 1988). Like a suppression hearing, the purpose of the *Huntley* hearing was to determine the admissibility of statements made by Plaintiff (then defendant). (Dkt. No. 209-11). Thus, Defendants Darling and Todd are absolutely immune for all of their courtroom testimony in the criminal case against Plaintiff.[2] *See also Coggins v. Buonora*, 776 F.3d 108, 113 (2d Cir. 2015) (finding that the defendant officer was entitled to absolute immunity for grand jury testimony, but not for allegedly false statements and reports that "laid the groundwork" for indictment).

[2]     The record shows that Deputy Darling did not act as a "complaining witness" at the hearing, which was focused on Plaintiff's admissions. *See Rehberg*, 566 U.S. at 370, 132 S.Ct. 1497.

**\*8**  The remaining question is whether Defendants Darling and Todd are immune from liability for their other actions related to the prosecution. As to Deputy Darling, the record shows that he provided information about Plaintiff's arrest, which led to Plaintiff's arraignment shortly thereafter on November 22, 2009. (Dkt. No. 209-13). The Defendants argue that Deputy Darling had at least "arguable probable cause," and therefore he is entitled to qualified immunity for initiating Plaintiff's prosecution. (Dkt. No. 209-21, pp. 16, 22).

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, ––– U.S. ––––, 137 S.Ct. 548, 551, 196 L.Ed.2d 463 (2017) (per curiam) (internal quotation marks omitted). "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Where the relevant facts are not in

**Burdick v. Swarts, Not Reported in Fed. Supp. (2019)**

2019 WL 1409938

dispute, the Court can decide qualified immunity as a matter of law. *See Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990).

Probable cause is a "complete defense to a constitutional claim of malicious prosecution." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (citations omitted)). Moreover, qualified immunity is a defense on the same claim if there was *arguable probable cause*, which "exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Garcia*, 779 F.3d at 92 (citation omitted). In determining whether an officer's challenged conduct was objectively reasonable, courts consider the information possessed by the officer at the time of that conduct, but not the officer's "subjective intent, motives, or beliefs." *Id.* In deciding qualified immunity, the Court will consider the facts available to Deputy Darling at the time of arraignment, on each charge.

First, "a person is guilty of the offense of aggravated unlicensed operation of a motor vehicle in the third degree when such person operates a motor vehicle upon a public highway while knowing or having reason to know that such person's license or privilege of operating such motor vehicle in this state or privilege of obtaining a license to operate such motor vehicle issued by the commissioner is suspended, revoked or otherwise withdrawn by the commissioner." N.Y. Veh. & Traf. Law § 511(a). It is undisputed that at the time of Plaintiff's arrest, Deputy Darling's computer check of the DMV database showed that Plaintiff's license had been suspended, and that Plaintiff did not possess any paperwork showing otherwise. (Dkt. No. 209-3, pp. 9–10; Dkt. No. 209-4, pp. 16–17; Dkt. No. 209-7, pp. 15–17; Dkt. No. 209-12). At the motion to dismiss stage, the Court observed that it could not "determine whether and when Deputy Darling knew or should have known that plaintiff's license was not suspended." (Dkt. No. 155, p. 13). Now on summary judgment, the evidence shows that Deputy Darling relied on the DMV information about Plaintiff's license, both for the arrest and the arraignment, which occurred in a short span on the same day. (Dkt. No. 209-17, ¶ 13; Dkt. No. 209-8, p. 12). Although Plaintiff alleges that Deputy Darling should have known that the DMV information was unreliable, (Dkt. No. 157, ¶ 220), he has not adduced any evidence in support of this theory, nor has he shown that Deputy Darling learned of the mistake before Plaintiff's arraignment.[3] Based on these facts, it was objectively reasonable for Deputy Darling to believe on November 22, 2009 that probable cause existed

to charge Plaintiff for aggravated unlicensed operation of a motor vehicle in the third degree.

3        Although Plaintiff submitted an affidavit from Casselman, who allegedly informed officers at the scene that Plaintiff had paid the fine and "there must be some mix-up" about the license, Deputy Darling was under no obligation to credit that explanation, absent supporting evidence.

*9 Second, "a person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act...." N.Y. Penal Law § 195.05. In this case, it is undisputed that Plaintiff refused repeated orders from Deputy Darling to get out of his vehicle. (*See* Dkt. No. 209-4, pp. 15–18; Dkt. No. 209-5, pp. 2–3; Dkt. No. 209-12). It also undisputed that Plaintiff held onto his child while doing so. (*Id.*). Based on these facts, it was objectively reasonable for Deputy Darling to believe on November 22, 2009 that probable cause existed to charge Plaintiff for obstruction of governmental administration.

Third, as relevant here, a person is guilty of endangering the welfare of a child when he "knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his or her life or health." N.Y. Penal Law § 260.10(1). Again, it is undisputed that, while refusing Deputy Darling's orders to exit the vehicle, Plaintiff held onto his child. (*See* Dkt. No. 209-4, pp. 15–18; Dkt. No. 209-5, pp. 2–3; Dkt. No. 209-12). Deputy Darling testified at the criminal trial that the child prevented him from arresting Plaintiff, and that he was concerned about injuring the child. (Dkt. No. 209-3, p. 17). While Plaintiff claims that he held on for the child's safety, based on the facts available to Deputy Darling at the time, Plaintiff's conduct could also be viewed as likely to be injurious to the child. At a minimum, officers of reasonable competence could disagree on whether there was probable cause to charge Plaintiff for endangering the welfare of a child.

In sum, based on the undisputed facts, there was arguable probable cause to charge Plaintiff with aggravated unlicensed operation of a motor vehicle, endangering the welfare of a child, and obstructing governmental administration.

Case 5:22-cv-01024-MAD-TWD   Document 8   Filed 10/20/22   Page 25 of 38

**Burdick v. Swarts**, Not Reported in Fed. Supp. (2019)

2019 WL 1409938

Therefore, Deputy Darling is also entitled to qualified immunity for initiating the prosecution on those charges.

As to Sheriff Todd, the record shows that, after arraignment, he met with Plaintiff on November 24, 2009 to discuss the charges. (Dkt. No. 209-11, pp. 16–17; Dkt. No. 209-12). Plaintiff requested the meeting and Sherriff Todd warned him that any admissions could be used against him. (Dkt. No. 209-20, ¶¶ 39–40). In the meeting, Plaintiff made a series of admissions, which Sheriff Todd reported to the Oswego County District Attorney's Office, in the form of a "Notice of Intent to Use Admission or Confession" pursuant to New York Criminal Procedure Law § 710.30 (or "710.30 notice"). (Dkt. No. 209-12). The 710.30 notice stated in relevant part: "Admissions of no insp. sticker, no letter saying suspension was lifted. Admissions to holding child in front of him and refusing to get out of van." (*Id.*). The 710.30 notice is consistent with Plaintiff's own testimony, (Dkt. No. 209-4, pp. 15–18), and Plaintiff has not raised an issue of fact otherwise. Therefore, it was objectively reasonable for Sheriff Todd to believe that his action, in preparing the notice and reporting it to the District Attorney's Office, did not violate Plaintiff's rights or clearly established law. Accordingly, Sheriff Todd is entitled to qualified immunity for this action. *Cf. Coggins, 776 F.3d at 114* (finding that qualified immunity did not shield the defendant officer on malicious prosecution claim given evidence that he made *false* statements to the district attorney, because such conduct "constitute[s] a violation of clearly established law, and no objectively reasonable public official could have thought otherwise").

### B. First Amendment Retaliation

**\*10** To prevail on a First Amendment retaliation claim, a plaintiff must show: 1) that he has an interest protected by the First Amendment; 2) that the defendant's actions were motivated or substantially caused by the plaintiff's exercise of that right; and 3) that the defendant's actions effectively chilled the exercise of his First Amendment right or caused some other type of harm. *See Gill v. Pidlypchak*, 389 F.3d 379, 383 (2d Cir. 2004); *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

As previously noted, Plaintiff could have a potential First Amendment retaliation claim based on the theory that, after he spoke out and verbally challenged Deputy Darling at the time of the arrest, Deputy Darling retaliated by initiating the prosecution against Plaintiff for aggravated unlicensed operation of a motor vehicle, obstruction of governmental administration, and child endangerment, all without probable

cause.[4] (Dkt. No. 155, p. 16). The Court found that "[a]ny claim that Deputy Darling had a retaliatory motive when he arrested Plaintiff lacks merit." (*Id.*). The Court noted that "the question of whether Deputy Darling had probable cause to charge plaintiff with endangering the welfare of a child and obstructing governmental administration cannot be determined on a motion addressed to the second amended complaint." (*Id.*). Further, the Court observed that, based on the pleadings, it was unclear if Deputy Darling at some point "knew or should have known that in fact plaintiff's license was valid," which could support a retaliation claim for initiating and continuing the prosecution for aggravated unlicensed operation of a motor vehicle. (*Id.*).

[4]     The Court dismissed any First Amendment retaliation claim against Sheriff Todd. (Dkt. No. 155, p. 21).

The Defendants argue that Plaintiff's First Amendment retaliation claim against Deputy Darling must fail for several reasons including: 1) lack of any evidence of retaliatory causation"; and 2) the immunity defenses applicable to their actions. (Dkt. No. 209-21, pp. 21–22). The latter argument is dispositive here. Plaintiff's First Amendment claim runs up against the same immunity defenses as his claim for malicious prosecution. As discussed above, Deputy Darling is absolutely immune for his testimony in the judicial proceedings against Plaintiff, which therefore, cannot support Plaintiff's First Amendment retaliation claim. Further, Deputy Darling is entitled to qualified immunity for charging Plaintiff and initiating the prosecution, as discussed above. Accordingly, Plaintiff's First Amendment retaliation claim fails for these same reasons. *See also Collins v. City of New York*, 295 F.Supp.3d 350, 368 (S.D.N.Y. 2018) ("Because the Court has already concluded that the Defendants had arguable probable cause to arrest the Plaintiffs for disorderly conduct, ... the Court finds that the Defendants are entitled to qualified immunity on Plaintiffs' First Amendment retaliation claim on the basis of that same arguable probable cause.").

### C. Supervisory Liability Against Sheriff Todd

As the Court previously stated, Plaintiff pled a federal claim for supervisory liability against Sheriff Todd, based on his alleged failure to remedy an ongoing violation of Plaintiff's constitutional rights, specifically Deputy Darling's allegedly malicious and retaliatory prosecution of Plaintiff. (Dkt. No. 155, pp. 20–21). Under Section 1983, "a supervisor may not be held liable merely because his subordinate committed a constitutional tort." *Poe v. Leonard*, 282 F.3d 123, 140 (2d

Burdick v. Swarts, Not Reported in Fed. Supp. (2019)

2019 WL 1409938

Case 5:22-cv-01024-MAD-TWD   Document 8   Filed 10/20/22   Page 26 of 38

Cir. 2002). As relevant here, Sheriff Todd may be liable as supervisor to Deputy Darling if Plaintiff can show that Sherriff Todd, "after being informed of the violation through a report or appeal, failed to remedy the wrong." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

**\*11** Plaintiff's theory appears to be as follows: 1) Deputy Darling initiated the prosecution on November 22, 2009; 2) Sherriff Todd met with Plaintiff on November 24, 2009 and learned that the prosecution was unconstitutional; and 3) Sheriff Todd did nothing to remedy the violation thereafter. (Dkt. No. 157, pp. 28–32). The Defendants argue that Plaintiff's claim fails for several reasons, including that Deputy Darling did not engage in unconstitutional conduct, and that Sheriff Todd is entitled to qualified immunity "because there was at least arguable probable cause as to all of the charges." (Dkt. No. 209-21, p. 18).

Once again, the above qualified immunity analysis dictates dismissal of Plaintiff's claim. The record shows that Sheriff Todd met with Plaintiff on November 22, 2009, at which time Plaintiff discussed his November 22, 2009 arrest. (Dkt. No. 209-11, pp. 16–17; Dkt. No. 209-12). Although Plaintiff offered his version of events, he also made several important admissions: 1) not having an inspection sticker; 2) not having a letter saying his license suspension was lifted; 3) holding his child between himself and the officer; and 4) refusing to get out of the van when instructed by the officer. (Dkt. No. 209-12). These admissions are consistent with Deputy Darling's testimony as to the factual basis for arresting and charging Plaintiff. (*See* Dkt. No. 209-3, pp. 7–17). Moreover, even though Plaintiff tried to justify his actions and put them in context, these admissions are consistent with Plaintiff's own testimony. (Dkt. No. 209-4, pp. 15–18).

Based on the undisputed facts, there was at least arguable probable cause for Deputy Darling to initiate prosecution on the charges for aggravated unlicensed operation of a motor vehicle, endangering the welfare of a child, and obstruction of governmental administration, and the November 24, 2009 meeting did not suggest otherwise. Therefore, it was objectively reasonable for Sheriff Todd to believe that Plaintiff did not suffer a constitutional violation that needed remedying. Accordingly, Sheriff Todd is entitled to qualified immunity on Plaintiff's supervisory liability claim. *See also Levy v. City of New York*, 935 F.Supp.2d 575, 593 (E.D.N.Y. 2013) ("The Court concludes Sgt. Reed is entitled to qualified immunity on Plaintiff's supervisory liability claim for substantially the same reasons he is entitled to qualified

immunity on the false arrest and malicious prosecution claims.").

### D. Due Process Claim

Plaintiff alleges that Commissioner Swarts and the John Doe Defendants (apparently unknown employees of the DMV) violated his rights to procedural and substantive due process under the Constitution by failing to lift Plaintiff's license suspension, allowing it to remain in effect for eight months, and reporting his license as suspended to the police during that time, when it was not. (Dkt. No. 157, pp. 17–23). Plaintiff also alleges that Commissioner Swarts and the John Does are subject to supervisory liability because they were aware of the license issue and failed to remedy it. (*Id.*, pp. 23–24). Further, Plaintiff alleges that they exhibited deliberate indifference and their actions are the policy, custom, and practice of the DMV. (*Id.*).

In general, a procedural due process violation under the Fourteenth Amendment occurs when the government deprives a person of a protected life, liberty, or property interest without first providing notice and opportunity to be heard. *Spinelli v. City of New York*, 579 F.3d 160, 168 (2d Cir. 2009) (citing *Sanitation and Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 995 (2d Cir. 1997)). On the other hand, substantive due process "protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect or ill-advised.' " *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (1995) (quoting *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994)).

**\*12** Commissioner Swarts argues that "the record is devoid of any facts that support personal involvement of former Commissioner Swarts in any constitutional violations." (Dkt. No. 201, p. 2). In response, Plaintiff states that Commissioner Swarts "did either directly or indirectly violate Plaintiffs constitutional rights by his actions/or lack of actions. Defendant, Swarts, has personal knowledge of, and was in direct supervisory command of the DMV personnel, and the policies and procedures utilized by the employees of the DMV[.]" (Dkt. No. 208).

Personal involvement of an individual defendant "in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Indeed, "a defendant in a § 1983 action may not be held liable for damages for constitutional

violations merely because he held a high position of authority." *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir. 1996). "Because vicarious liability is inapplicable to ...§ 1983 suits," Plaintiff must raise a genuine dispute as to whether "each Government-official defendant, through the official's *own individual actions*, has violated the Constitution." *Victory v. Pataki,* 814 F.3d 47, 67 (2d Cir. 2016), *as amended* (Feb. 24, 2016) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) (emphasis added).

Here, Plaintiff has not adduced any evidence to show that Commissioner Swarts directly participated in the alleged failure to lift Plaintiff's license suspension. In Commissioner Swarts's sworn responses to Plaintiff interrogatories, he stated that he did not possess any meaningful information regarding the suspension of Plaintiff's license, the continuation of that suspension, or the specifics of the incident forming the basis of this action. (Dkt. No. 195-1). Plaintiff's conclusory assertions, unsupported by any evidence, are not enough to raise an issue of fact as to Commissioner Swarts's personal involvement on a direct participation theory.[5]

[5]    Plaintiff objects that he was not afforded the opportunity to take the deposition of Commissioner Swarts, but United States Magistrate Judge David E. Peebles declined that request because there was no evidence that Commissioner Swarts had relevant information. (Dkt. No. 199, p. 7).

Nor has Plaintiff adduced any evidence to show personal involvement of Commissioner Swarts under any of the other methods recognized by the Second Circuit. Besides direct participation, Plaintiff could show that: 1) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; 2) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; 3) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or 4) the defendant exhibited deliberate indifference to the rights of the plaintiff by failing to act on information indicating that unconstitutional acts were occurring. *See Warren v. Pataki,* 823 F.3d 125, 136 (2d Cir. 2016) (citing *Colon,* 58 F.3d at 873).

Plaintiff appears to allege most of these theories, (Dkt. No. 157, pp. 13–24), but there is simply no evidence in the record to support them. For example, there is no evidence that Commissioner Swarts was made aware of Plaintiff's

license suspension and failed to remedy it. Similarly, there is no evidence that he failed to act on information that unconstitutional acts were occurring. Moreover, there is no evidence as to who at the DMV failed to update the database, much less that Commissioner Swarts supervised that person.[6] Plaintiff repeatedly alleges that the DMV (led by Commissioner Swarts) delayed in lifting license suspensions, which amounted to an unconstitutional policy, custom, and practice, (*see* Dkt. No. 157, ¶ 147), but he has not adduced any supporting evidence. Plaintiff's conclusory assertions, while enough to state a claim, are not enough to survive summary judgment. *See Kia P. v. McIntyre,* 235 F.3d 749, 763 (2d Cir 2000) ("A plaintiff may not survive a properly asserted motion for summary judgment on the basis of conclusory allegations alone."); *Shariff v. Poole,* 689 F.Supp.2d 470, 476 (W.D.N.Y. 2010) ("[T]he pro se plaintiff must still establish the existence of genuine issues of material fact to survive a motion for summary judgment; the pro se party's 'bald assertion,' when unsupported by evidence, is insufficient.").

[6]    Although Plaintiff alleges that unknown John/ Jane Doe Defendants at the DMV failed to lift his suspension, he has not identified these individuals or shown evidence of their involvement in infringing activity, and with discovery now closed, any claims against them must be dismissed. *See Blake v. Race,* 487 F.Supp.2d 187, 192 n.1 (E.D.N.Y. 2007) (citing cases).

**\*13** Likewise, to the extent Plaintiff alleges a claim pursuant to *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), that claim must fail for the same reasons. Plaintiff's theory appears to be that Commissioner Swarts, acting as official policymaker for the DMV, created the policy/practice whereby the DMV did not update their database, or ignored that policy/practice. (Dkt. No. 157, ¶ 94). However, once again, Plaintiff has not adduced any evidence whatsoever that this policy/practice existed, much less that Commissioner Swarts created or ignored it. For example, there is no evidence of an explicit policy or practice regarding DMV database updates. Nor is there evidence of a pattern of similar delays in clearing license suspensions from the DMV database, which might suggest a policy or practice. Rather, Plaintiff has alleged a single incident involving his license, and he then jumps to the conclusion that it was caused by a policy or practice at the DMV. As Defendants note, "Plaintiff makes only conclusory and speculative allegations, without offering any evidence that any of the named

**Burdick v. Swarts**, Not Reported in Fed. Supp. (2019)

2019 WL 1409938

Case 5:22-cv-01024-MAD-TWD    Document 8    Filed 10/20/22    Page 28 of 38

defendants actually created a policy or custom under which an unconstitutional practice occurred." (Dkt. No. 201-2, p. 6). Simply put, these allegations are not enough to sustain a *Monell* claim on summary judgment. *See Nardoni v. City of New York*, 331 F.Supp.3d 116, 119 (S.D.N.Y. 2018) (granting summary judgment on *Monell* claim because "Plaintiff points to no evidence in the record of a policy or custom by the City of New York"); *Castro v. County of Nassau*, 739 F.Supp.2d 153, 172 (E.D.N.Y. 2010) (finding that "conclusory allegation does not allow plaintiff's *Monell* claim to survive summary judgment").

### E. State Law Claims

Finally, having found that all of Plaintiff's federal claims are subject to summary judgment, the Court declines to exercise jurisdiction over Plaintiff's remaining state law claims, including any claims against Oswego County for vicarious liability under New York State law. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court "may decline to exercise supplemental jurisdiction over [pendent state law claims] if ... the district court has dismissed all claims over which it has original jurisdiction"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine —judicial economy, convenience, fairness, and comity— will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Walker v. Time Life Films,*

*Inc.*, 784 F.2d 44, 53 (2d Cir. 1986) (holding that "federal courts, absent exceptional circumstances, should abstain from exercising pendent jurisdiction when federal claims in a case can be disposed of by summary judgment") (citing *Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176, 1180 (1974)). Accordingly, Plaintiff's state law claims against Defendants are dismissed.

### V. CONCLUSION

For these reasons, it is

**ORDERED** that Defendant Swarts's motion for summary judgment (Dkt. No. 201) is **GRANTED**; and it is further

**ORDERED** that the Oswego County Defendants' motion for summary judgment (Dkt. No. 209) is **GRANTED**; and it is further

**ORDERED** that Defendants' motion to strike is **DENIED** as moot; and it is further

**ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 157) is **DISMISSED with prejudice**; and it is

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1409938

2014 WL 6078425
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Robert H. AJAMIAN, Plaintiff,
v.
Kinah NIMEH, Stock Broker at Gunn Allen
Financial, Arbitration 13–02183, Defendant.

No. 1:14–CV–0320 (GTS/CFH).
|
Signed Nov. 13, 2014.

**Attorneys and Law Firms**

Robert H. Ajamian, Latham, NY, pro se.

---

### DECISION and ORDER

Hon. GLENN T. SUDDABY, District Judge.

 **\*1**  Currently before the Court, in the above-captioned civil rights action filed by Robert H. Ajamian ("Plaintiff") against the above-captioned Defendants, is United States Magistrate Christian F. Hummel's Report–Recommendation recommending that Plaintiff's Complaint be dismissed pursuant to 28 U.S.C. § 1915 and § 1915A for failure to state a claim but otherwise granting Plaintiff leave to submit an amended complaint. (Dkt. No. 15.) Plaintiff has not filed an objection to the Report–Recommendation and the deadline in which to do so has expired. (See generally Docket Sheet.) Instead, Plaintiff has filed a proposed amended complaint. For the reasons set forth below, Magistrate Judge Hummel's Report–Recommendation is accepted and adopted in its entirety. In addition, Plaintiff's proposed amended complaint is denied and this action is dismissed with prejudice. Further, Plaintiff is directed to show cause, within thirty (30) days of this Decision and Order, as to why he should not be barred from filing any future *pro se* documents or motions in this action without first obtaining leave of the Court.

### I. Report–Recommendation

When *no* objection is made to a report-recommendation, the Court subjects that reportrecommendation to only a *clear error* review. Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review,

"the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.; see also Batista v. Walker,* 94–CV–2826, 1995 WL 453299, at \*1. (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

Here, based upon a review of this matter, the Court can find no error with Magistrate Judge Hummel's Report–Recommendation, clear or otherwise. (Dkt. No. 15.) Magistrate Judge Hummel employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. (*Id.*) Further, Magistrate Judge Hummel's Report–Recommendation would survive even a *de novo* review. As a result, the Report–Recommendation is accepted and adopted in its entirety for the reasons stated therein.

### II. Proposed Amended Complaint

Ostensibly pursuant to Magistrate Judge Hummel's recommendation that this Court grant Plaintiff leave to file an amended complaint, Plaintiff prematurely filed a proposed amended complaint, but did so by insisting that it be treated as a separate action. (*See Ajamian v. Gunn Allen Fin., et al.,* 1:14–CV–1211 [DNH/ATB].) As Magistrate Judge Andrew T. Baxter observed, that complaint adds a defendant, adds facts and changes the basis for Plaintiff's allegation of jurisdiction. (*See id.,* Dkt. No. 5) However, because that complaint is "challenging the same conduct by the same defendant at the same time as the complaint in [this action]," Magistrate Judge Baxter closed the separate action and directed that the complaint filed therein be filed as a proposed amended complaint in this action. (*See id.,* Dkt. No. 5.) Therefore, the Court will review Plaintiff's proposed amended complaint to determine whether a meritorious claim is stated, which would allow the action to go forward.

 **\*2**  As an initial matter, it is important to note that Plaintiff filed an exact copy of the original complaint in this action in the United States District Court for the District of Columbia on June 10, 2014, which was thereafter transferred to the Eastern District of New York. *See Ajamian v. Nimeh,* 2:14–CV–4093(JS/GRB). On September 26, 2014, the District Judge in that case dismissed Plaintiff's claims without prejudice and granted Plaintiff leave to file an amended complaint within thirty days of the filing of the Order. *See Ajamian v. Nimeh,* No. 14–CV–409, 2014 WL 4828884, at \*4 (E.D.N.Y. Sept. 26, 2014). Specifically, the Order states

that "[i]f Plaintiff fails to file an Amended Complaint within the time allowed, the Complaint shall be DISMISSED WITH PREJUDICE." *Id.* (emphasis in original). Plaintiff having not filed an amended complaint in that action within the time allowed, his claims have been dismissed with prejudice. For this reason, the Court finds that the proposed amended complaint in this action is futile because Plaintiff is estopped from pursuing his claims under the doctrine of *res judicata.*

Under the doctrine of *res judicata,* or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Thus, the doctrine bars later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action. *EDP Med. Computer Sys., Inc. v. United States,* 480 F.3d 621, 624 (2d Cir.2007) (internal citations and quotation omitted).

A dismissal with prejudice has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action. Such a dismissal constitutes a final judgment with the preclusive effect of *res judicata* not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit.

*Nemaizer v. Baker,* 793 F.2d 58, 60–61 (2d Cir.1986) (internal citations and quotation omitted).

Consequently, Plaintiff's claims in his original complaint as well as those in the proposed amended complaint are precluded under the doctrine of *res judicata. See Nemaizer,* 793 F.2d, at 61. For this reason, Plaintiff's proposed amended complaint is denied and this action is dismissed without prejudice.

## III. Appropriateness of Bar Order

A review of Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service reveals that, over the past year, Plaintiff has filed nine *pro se* civil actions (including this one) in two different federal district courts.[1] Eight of these nine actions, including the current action, have been dismissed based on pleading deficiencies or procedural failures.[2] In addition, Plaintiff has filed four appeals in civil actions.[3] While two

of those appeals are pending, two have been dismissed based on lack of merit.[4]

[1] *See Ajamian v. State of New York,* No. 13–CV–1316, Complaint (N.D.N.Y. filed Oct. 23, 2013) (*pro se* civil rights action); *Ajamian v. Morgan Stanley Smith Barney, et. al,* No. 14–CV–0306, Complaint (N.D.N.Y. filed Mar. 21, 2014) (*pro se* civil rights action); *Ajamian v. Morgan Stanley Smith Barney, et. al,* No. 14–CV–0319, Complaint (N.D.N.Y. filed Mar. 24, 2014) (*pro se* civil rights action; *Ajamian v. Nimeh,* No. 14–CV–0320, Complaint (N.D.N.Y. filed Mar. 24, 2014) (*pro se* civil rights action); *Ajamian v. Zakarian,* No. 14–CV–0321, (N.D.N.Y.2014) (current action barred by *res judicata* ); *Ajamian v. Nimeh,* No. 14–CV–4093, (E.D.N.Y.2014) (*pro se* civil rights action); *Ajamian v. Zakarian,* No. 14–CV–1127, Complaint (N.D.N.Y. filed Sept. 15, 2014) (*pro se* civil rights action); *Ajamian v. Morgan Stanley Smith Barney, et. al,* No. 14–CV–1204, Complaint (N.D.N.Y. filed Oct. 1, 2014) (*pro se* civil rights action); *Ajamian v. Nimeh,* No. 14–CV–1211, Complaint (N.D.N.Y. filed Oct. 3, 2014) (*pro se* civil rights action).

[2] *See Ajamian v. State of New York,* No. 13–CV–1316, Judgment (N.D.N.Y. filed August 11, 2014) (dismissing with prejudice for failure to state a claim and lack of subject matter jurisdiction); *Ajamian v. Morgan Stanley Smith Barney, et. al,* No. 14–CV–0306, Judgment (N.D.N.Y. filed May 28, 2014) (dismissing with prejudice for failure to state a claim); *Ajamian v. Morgan Stanley Smith Barney, et. al,* No. 14–CV–0319, Text Order (N.D.N.Y. filed Mar. 26, 2014) (terminated action as duplicative of 14–CV–306); *Ajamian v. Nimeh,* No. 14–CV0320 (N.D.N.Y.2014) (current action barred by res judicata); *Ajamian v. Zakarian,* No. 14–CV0321, Judgment (N.D.N.Y. filed Aug. 26, 2014) (dismissed with prejudice for failure to state a claim and lack of subject matter jurisdiction); *Ajamian v. Nimeh,* No. 14–CV–4093, Memorandum & Order (E.D.N.Y. filed Sept. 26, 2014) (dismissed with prejudice for failure to state a claim); *Ajamian v. Morgan Stanley Smith Barney, et. al,* No. 14–CV–1204, Judgment (N.D.N.Y. filed Oct. 30, 2014) (dismissed with prejudice for failure to state a claim and lack of subject matter

jurisdiction); *Ajamian v. Nimeh*, No. 14–CV–1211, Judgment (N.D.N .Y. filed Oct. 9, 2014) (closed and ordered that complaint be filed as proposed amended complaint in 14–CV320).

3       *See Ajamian v. Morgan Stanley Smith Barney, LLC,* No. 14–2212, Notice of Appeal (2d Cir. filed June 4, 2014); *Ajamian v. State of New York,* No. 14–2934, Notice of Appeal (2d Cir. filed Aug. 15, 2014); *Ajamian v. Zakarian,* No. 14–3432, Notice of Appeal (2d Cir. filed Sept. 2, 2014); *Ajamian v. Morgan Stanley Smith Barney,* 14–CV–1204, Notice of Appeal to 2d Cir. (N.D.N.Y. filed Nov. 3, 2014).

4       *See Ajamian v. Morgan Stanley Smith Barney, LLC,* No. 14–2212, Order (2d Cir. filed Sept. 24, 2014) (dismissing appeal for lack of arguable basis in law or fact); *Ajamian v. State of New York,* No. 14–2934, Order (2d Cir. filed Oct. 22, 2014) (dismissing appeal for lack of arguable basis in law or fact) (motion for reconsideration pending).

**\*3** Based on Plaintiff's litigation history, the Court finds that (1) Plaintiff lacks a good-faith expectation in prevailing in his lawsuits, (2) he has proven himself to be vexatious and indeed incorrigible when proceeding *pro se,* (3) he has caused needless expense to other parties and placed an unnecessary burden on the Court and its personnel, and (4) he has demonstrated that no lesser sanctions (e.g., such as dismissal or chastisement) would be adequate to protect the Court and other parties.

Under such circumstances, a federal district court may impose reasonable filing restrictions on a *pro se* litigant in that particular court, pursuant to 28 U.S.C. § 1651(a) and its inherent authority to control and manage its own docket so as to prevent abuse in its proceedings. For example, a federal district court may, after providing an appropriate opportunity to be heard, prohibit a vexatious litigant from filing, in that particular court, any action *pro se* (that is, without counsel), without prior leave of that court. *See Hong Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir.2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system.") [internal quotations and citations omitted]; *In re Sassower,* 20 F.3d 42, 44 (2d Cir.1994) (where a *pro se* plaintiff has demonstrated a "clear pattern of abusing the litigation process by filing vexatious and frivolous complaints," a "leave to file" requirement

may be instituted by the court as an appropriate sanction); *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) ( "[T]he district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard."); *Azubuko v. Unknown Boston Police Officers,* 08–CV–0330, 2008 WL 1767067, at \*1 (N.D.N.Y. Apr. 16, 2008) (McCurn, J.).

Because of his history of filing unmerited and indeed vexatious lawsuits, including the current action, Plaintiff is hereby warned that the Court will not tolerate the filing of frivolous documents or motions in this action by him in the future. As a result, Plaintiff is directed to show cause, within thirty (30) days, why this Court should not issue an Order barring him from filing any future *pro se* documents or motions in this action without first obtaining leave of the Court. In the event that Plaintiff fails to show such cause, he will be prohibited from filing, in this action, any documents or motions without prior leave of the Court, pursuant to 28 U.S.C. § 1651(a) and the Court's inherent authority to control and manage its own docket so as to prevent abuse in its proceedings.

Further, in the event Plaintiff fails to show such cause, this case will be forwarded to Chief United States District Judge Gary L. Sharpe with the recommendation of the undersigned that an Anti–Filing Injunction Order be issued against Plaintiff, which would prohibit Plaintiff from filing, in the Northern District of New York, any action *pro se* (that is, without counsel) without first obtaining leave of the Court.

**\*4 ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Hummel's Report–Recommendation (Dkt. No. 15) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's proposed amended complaint (Dkt. No. 32) is **DENIED;** and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** with prejudice; and it is further

**ORDERED** that *Plaintiff is hereby directed to show cause, within thirty (30) days of this Decision and Order, why this Court should not issue an Order barring him from filing any future pro se documents or motions in this action without first obtaining leave of the Court. In the event that Plaintiff fails to show such cause, he will be prohibited from filing,*

*in this action, any document or motion pro se (that is, without counsel) without prior leave of the Court, pursuant to 28 U.S.C. § 1651(a) and the Court's inherent authority to control and manage its own docket so as to prevent abuse in its proceedings.*

## REPORT–RECOMMENDATION and ORDER

CHRISTIAN F. HUMMEL, United States Magistrate Judge.

The Clerk has sent to the Court for review a complaint filed by pro se plaintiff Robert H. Ajamian ("Ajamian"). Compl. (Dkt. No. 1). Ajamian has not paid the filing fee and instead seeks permission to proceed with this matter in *forma pauperis* ("IFP"). Dkt. Nos. 2, 5–6, 9, 12–14).

### I. Discussion

### A. Application to Proceed IFP

Ajamian has submitted an IFP Application. Despite the absence of a properly completed IFP application before the Court, due to significant efforts made by Ajamian, coupled with a review of the information provided therein, the Court finds that Ajamian may properly proceed with this matter IFP.

### B. Allegations in the Complaint

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Ajamian asserts that defendant Nimeh, a stock broker, violated his constitutional rights by placing non-conservative trades using his retirement account between March 2005 and September 2011, which resulted in a $30,000.00 loss. Compl. at 2–4. Ajamian contends that he is entitled to treble damages, or $90,000.00. *Id.* For a more complete statement of Ajamian's claims, reference is made to the complaint.

In drafting the complaint, Ajamian utilized a court form normally used for litigants seeking redress of alleged constitutional violations through 42 U.S.C. § 1983. An action commenced pursuant to 42 U.S.C. § 1983 requires proof of the "deprivation of any right[ ], privilege[ ], or immunit[y] secured by the Constitution" or laws of the federal government. 42 U.S.C. § 1983; *see also German v. Fed. Home Loan Mortg. Corp.,* 885 F.Supp. 537, 573 (S.D.N.Y.1995) ("Section 1983 establishes a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States.") (quotations omitted).

**\*5** Ajamian's § 1983 action should be dismissed for multiple reasons. First, Ajamian fails to state a cognizable cause of action for which relief can be granted. It is unclear to the Court what civil or constitutional rights were allegedly violated since Ajamian fails to specify the nature of such rights. Ajamian only alleges that defendant failed to make conservative trades on his behalf. Furthermore, the named defendant Nimeh is not asserted to have acted under the color of state law. *See, e.g., Rounseville v. Zahl,* 13 F.3d 625 (2d Cir.1994) (noting state action requirement under § 1983); *Wise v. Battistoni,* No. 92–CV–4288 (PKL),1992 WL 380914, at *1 (S.D.N.Y. Dec. 10, 1992) (same) (citations omitted). [1] State action is an essential element of any § 1983 claim. *See Gentile v. Republic Tobacco Co.,* No. 95–CV–1500 (RSP) (DNH), 1995 WL 743719, at *2 (N.D.N.Y. Dec. 6, 1995) (citing *Velaire v. City of Schenectady,* 862 F.Supp. 774, 776 (N.D.N.Y.1994) (citation omitted)). There is no allegation that Nimeh acted under color of state law with regard to the stock trades. As such, § 1983 is not the proper vehicle through which Ajamian could seek judicial review of his claims. Accordingly, to the extent Ajamian seeks to remedy a constitutional violation through § 1983, the complaint fails to state a cause of action to which relief can be granted and should be dismissed.

[1]     All unpublished opinions cited to by the Court in this Report–Recommendation are, unless otherwise noted, attached to this Recommendation.

Ajamian also asserts that Nimeh violated his rights under "U.S. civil statutes 22 A.L.R. 5th 261, 152 A.L.R. Fed. 1." Compl. at 1. Reliance on either authority is misplaced. Both references are not to federal statutes but to American Law Reports articles, the former concerns statutes on assaults motivated by hate crimes and ethnic intimidation while the latter discusses governmental actions that constitute "reverse

discrimination." 152 A.L.R. FED. 1 (1999); 22 A.L.R. 5th 261 (1994). The complaint is devoid of any factual allegations concerning these legal issues. Therefore, despite Ajamian's conclusory statements, he has failed to state a claim in citing these articles.

It is well established that a federal court is obligated to notice on its own motion the basis for its own jurisdiction; thus, the Court must examine whether diversity jurisdiction exists. *City of Kenosha, Wisconsin v. Bruno,* 412 U.S. 507, 512 (1973); *see also Alliance of Am. Ins. v. Cuomo,* 854 F.2d 591, 605 (2d Cir.1988) (challenge to subject matter jurisdiction cannot be waived); FED. R. CIV. P. 12(h)(3) (court may raise basis of its jurisdiction sua *sponte* ). Ajamian asserts the following claims, "breach of fiduciary duty, misrepresentation/non-disclosure, activity suitability, unauthorized trading, breach fo contract, error charges, failure to supervise, margin calls, negligence, criminal misrepresentation, fraudulent concealment...." Compl. at 1. Thus, the Court considers whether it has subject matter jurisdiction under 28 U.S.C. § 1332, which confers diversity jurisdiction.

 *6  For diversity jurisdiction to exist, the matter in controversy must exceed $75,000 and must be between

 (1) citizens of different States;

 (2) citizens of a State and citizens or subjects of a foreign state;

 (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

 (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a). For purposes of diversity jurisdiction, an individual's citizenship is the individual's domicile, which is determined on the basis of two elements: "(1) physical presence in a state and (2) the intent to make the state a home." *See Zimak Co. v. Kaplan,* No. 98–CV–3176(DAB)NRB., 1999 WL 38256, at *2 (S.D.N.Y. Jan. 28, 1999) (quoting 15 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 102.34[2] (3d ed.1998)). Corporations are deemed to be "a citizen of any State by which it has been incorporated and of the State where it has its principal place of business[.]" 28 U.S.C. § 1332(c).

In the "Parties" section of the complaint and civil cover sheet, Ajamian lists that he is a resident of Albany, New York and Nimeh is located in Melville, New York. Even if the amount in controversy is set at $90,000.00, thus meeting the amount in controversy requirement, Ajamian has failed to satisfy the domicile requirement for purposes of diversity jurisdiction. Accordingly, where the domicile requirement is unmet, diversity jurisdiction does not exist and the Court lacks subject matter jurisdiction to consider the action. When subject matter jurisdiction is lacking, dismissal is mandatory. *United States v. Griffin,* 303 U.S. 226, 229 (1938); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Thus, dismissal of this action may be warranted.

To the extent Ajamian seeks to bring criminal charges against Nimeh, Ajamian lacks a cognizable right in that regard. It is well-settled law in this Circuit that there is no constitutional right to have criminal wrongdoers prosecuted. *See Connecticut Action Now, Inc. v. Roberts Plating Co.,* 457 F.3d 81, 86–87 (2d Cir.1972) ("It is a truism ... that in our federal system crimes are always prosecuted by the Federal Government, not by ... private citizens.").

Lastly, attached to Ajamian's complaint is a "FINRA [ ("Financial Industry Regulatory Authority") ] dispute resolution claim information tracking form" dated July 19, 2013, which indicates that a claim was filed against Nimeh, to be resolved through arbitration proceedings. Compl. at 5–8. While Ajamian does not refer to a FINRA arbitral award in his complaint, allege specifics facts surrounding the circumstances of an arbitral award, request specific judicial action on such an award, or attach the award to his complaint, it appears that Ajamian filed a claim with FINRA for arbitration proceedings to resolve disputes against Nimeh. Furthermore, Ajamian alludes to an arbitration proceeding by inserting an arbitration number in the caption of his complaint. Compl. at 1. In light of his pro se status, the Court recommends that Ajamian be afforded an opportunity to amend his complaint to make clear this cause of action. Ajamian should also be provided an opportunity to provide more facts in his amended complaint which would allow the Court, and defendant, to assess whether a meritorious action is stated.

## II. Amendment

 *7  In sum, Ajamian's complaint in its current form fails to state a claim for relief and fails to state the Court's subject matter jurisdiction. As such, dismissal would be appropriate

pursuant to 28 U.S.C. §§ 1915(e) and 1915A. However, in light of Ajamian's pro se status, this Court recommends that prior to dismissing this action, Ajamian be directed to amend his complaint to provide clearer details regarding his claim. Ajamian is directed to draft a complaint which satisfies the plausibility standard outlined in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), requiring plaintiffs to "plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citations omitted). Specifically, Ajamian is directed to draft a complaint which Ajamian have to *allege specific facts* sufficient to plausibly state that the FINRA arbitration award, if it exists, merits judicial review.

### III. Conclusion

**WHEREFORE,** it is hereby

**ORDERED** that plaintiff's IFP application (Dkt.Nos.12–14) [2] is **GRANTED;** [3] and it is further

[2]  Plaintiffs' pending letter motions and exhibits (Dkt.Nos.12–14) were filed in support of his IFP application, which was first filed on March 24, 2014 (Dkt. No. 2).

[3]  Plaintiff should note that although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**RECOMMENDED** that pursuant to the Court's review under 28 U.S.C. § 1915 and § 1915A, plaintiff's complaint is **DISMISSED** for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction; and it is further

**RECOMMENDED** that alternatively, in light of plaintiff's pro se status, prior to dismissing plaintiff's complaint in its entirety, he be provided an opportunity to amend his complaint to amplify the facts that would support his claim for entitlement to relief; and it is further

**ORDERED** that the Clerk serve a copy of this Report–Recommendation and Order on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the ... recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

Filed May 22, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 6078425

---

**End of Document**                                         © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,
v.
BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION* [1]

[1]
    At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

PITMAN, United States Magistrate Judge.

**\*1** TO THE HONORABLE BARBARA S. JONES, United States District Judge,

I. *Introduction*
By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff has previously had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.

II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [*sic* ]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants—Dr. Bernstein and Dr. Finkelstein. The action was dismissed as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request." [2] By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."

[2]
    Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

III. *Analysis*
28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious

physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson[3] v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at \*1–\*2.

3   It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at \*1, \*7.

  - In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at \*1–\*2.

  - Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United

States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009). [4]

[4]
    Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci[a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's

history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

[5]
    Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

    > Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

    *Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4. Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

### IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

### V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and

2010 WL 5185047

responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155

(1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5185047

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.